GLATZ, Appellant, vs. GENERAL ACCIDENT, FIRE & LIFE ASSURANCE CORPORATION, LTD., OF PERTH, SCOTLAND (Garnishee defendant), Respondent.

*May 4—September 23, 1921.*

*Insurance: Contract one of indemnity: Right of insurer to defend action against insured: Bankruptcy of assured: Liability of insurer for judgment against assured.*

1. Where an insurance company defended an action brought against an assured by reason of the death of a third person caused by the negligence of assured, and after judgment in the trial court dismissing plaintiff's action the assured was adjudicated a bankrupt, the insurance company was not liable for the amount of the judgment which was entered in plaintiff's favor on appeal to this court.

Glatz v. General Acc., F. & L. Assur. Corp. 175 Wis. 42.

2. A policy insuring against loss by reason of the liability imposed upon assured because of injuries sustained by a third person in an automobile collision, but also providing that no action shall lie against the insurer unless it be brought by the assured for loss actually sustained and paid by him in money, is a contract of indemnity.

3. An insurance company insuring against such loss may lawfully participate in the defense of actions against the assured, though the policy provides that no action shall lie against it unless it be brought by the assured for loss actually sustained and paid in money; and its contract assuming such obligation to defend an action is binding and enforceable between the parties.

4. Under such a policy, the company's agreement to defend any action against the assured and pay the costs of the litigation, and its reservation of the right to settle claims or suits, is not an assumption by it of liability for any claim which may finally be established by judgment so as to waive the condition that no action can be maintained unless the assured has actually paid the loss.

ESCHWEILER and DOERFLER, JJ., dissent.

APPEAL from a judgment of the circuit court for Milwaukee county: E. T. FAIRCHILD, Circuit Judge. *Affirmed.*

The judgment rendered was in favor of the garnishee defendant and against the plaintiff.

The action was a garnishment in aid of execution brought by plaintiff, a judgment creditor of the principal defendant, against the garnishee, a liability insurance company, upon a policy by the terms of which plaintiff claims the garnishee became indebted to the principal defendant upon the entry of the judgment by which plaintiff became a creditor of the latter.

Cyprian Glatz, husband of the plaintiff, was killed February 9, 1917, in a collision between the motorcycle on which he was riding and the delivery truck of the principal defendant. At the time of the collision a liability insurance policy was in force whereby the garnishee defendant agreed to indemnify the assured (the principal defendant) against "loss by reason of the liability imposed by law" upon the principal defendant for liability in such accidents. The

garnishee defendant further agreed to defend actions brought against the assured to establish the liabilities covered by the policy and to pay the costs taxed in such actions against the assured. Clause E of the general conditions of the policy provided that no action should be brought upon the policy except by the assured to recover for loss actually sustained and paid in money in satisfaction of judgment after trial of the issue. Other clauses of the policy required notice to be given to the insurer of accidents and of claims and suits against the insured in respect thereto. Further provisions reserved to the insurer the right to control and conduct the defense of actions against the assured, forbade the assured to make voluntary settlements or to interfere with the conduct of the litigation, and compelled his co-operation and assistance in matters relating to the trial or settlement of actions.

Plaintiff commenced an action in the circuit court for Milwaukee county on April 6, 1917, against the principal defendant for damages arising out of the death of her husband, and on May 24, 1918, a special verdict favorable to the plaintiff was rendered by the jury. Plaintiff's motion for judgment on the verdict of the jury was denied by the trial court on July 8, 1918. The defendant's motion to change the jury's answer to the question of the special verdict relating to contributory negligence from "No" to "Yes" was granted, and the defendant on July 11, 1918, was given judgment on the verdict so changed.

On November 18, 1918, the principal defendant was adjudicated bankrupt in the United States district court for the Eastern district of Wisconsin. On April 6, 1919, the supreme court reversed the judgment entered for the defendant in the trial court, and remanded the cause with directions to enter judgment for the plaintiff as found by the jury. On May 6, 1919, judgment was entered for the plaintiff in

accordance with the mandate of this court in the sum of
$4,872.30 damages and costs, and on June 4, 1919, judg-
ment was entered in favor of the plaintiff for $281.50,
supreme court costs.   On June 25, 1919, the plaintiff filed
her claim against the bankrupt estate of the principal de-
fendant, the claim being based on the judgment heretofore
entered.

The referee in bankruptcy rejected the plaintiff's claim
upon the ground that the debt at the time of the filing of
the petition in bankruptcy was an unliquidated tort claim
which had not been reduced to judgment, and that the
retroactive feature of the subsequent judgment was in-
effective to make plaintiff's debt a provable claim.   Upon
appeal to the district court the ruling of the referee in bank-
ruptcy was affirmed, the decision being rendered on Febru-
ary 2, 1920.   Upon the commencement of plaintiff's action
against the assured for damages arising out of the collision,
the garnishee defendant elected to and did take full control
of the defense of the action, both in the circuit court and on
appeal to the supreme court.   During the course of the
proceedings in the bankruptcy court the garnishee defendant
by its attorneys appeared of counsel for the trustee, filed
briefs, and participated in oral arguments in opposition to
the claims of plaintiff before the referee in bankruptcy and
the judge of the district court.

The garnishee defendant made two offers of settlement
directly to the plaintiff during the trial, and it is conceded
that it was the general practice of the garnishee to pay
damages directly to injured persons in cases where the as-
sured was solvent.   Upon the termination of the proceedings
in federal court an execution was issued and this garnish-
ment commenced against the garnishee in aid thereof.

This is an appeal from the judgment awarded, dismissing
the garnishee action.

For the appellant there was a brief by *O. W. Kreutzer* and *J. D. Wickhem,* both of Milwaukee, and oral argument by *Mr. Wickhem.*

For the respondent there was a brief by *Lines, Spooner & Quarles* of Milwaukee, and oral argument by *Charles B. Quarles.*

The following opinion was filed May 31, 1921:

SIEBECKER, C. J.    On this appeal the inquiry is presented: Is the insurance company indebted to the assured, the Kroeger Brothers, for the amount of the judgment plaintiff recovered against the assured?   The ground of liability claimed by plaintiff is that the garnishee defendant, the accident insurance company, is indebted to the assured on its accident insurance policy, whereby it agreed to indemnify the assured against "loss by reason of the liability imposed by law upon the assured for damages on account of bodily injuries, including death at any time resulting therefrom, accidentally suffered . . . while this policy is in force by any person . . . by reason of the ownership, maintenance, or use . . . of any of the automobiles" described in the declaration.   The insurance company in its policy also agreed "to defend in the name and on behalf of the assured any suits, even if groundless, brought against the assured to recover damages on account of such happenings as are provided" for in the policy, and "to pay . . . all costs taxed against the assured in any legal proceeding defended by the corporation [the insurance company], all interest accruing after entry of judgment upon such part thereof as shall not be in excess of said liability. . . ."   This insurance is, among other things, subject to the conditions that the assured give the company notice of the accident embraced in the policy, of any claim on account thereof, and forward to the company any summons or other process served on him to enforce such claim.   The company reserves the right to

settle any claim or suit. The policy stipulates, except as therein provided, that

"The assured shall not voluntarily assume any liability, settle any claim, or incur any expense except at his own cost, or interfere in any negotiation for settlement or legal proceeding without the consent of the corporation previously given in writing."

The trial court construed the policy to be one of indemnity upon the terms contained in the following conditions:

"E. No action shall lie against the corporation to recover for any loss under this policy, unless it shall be brought by the assured for loss actually sustained and paid by him in money in satisfaction of a judgment after the trial of the issue. No such action shall lie to recover under any other agreement of the corporation herein contained unless brought by the assured himself to recover money actually expended by him. . . . It is understood and agreed that the corporation does not prejudice by this condition any defenses against such action that it may be entitled to make."

We are unable to conceive more explicit terms in which condition E could have been phrased to express the idea that no liability shall exist under the policy by the company to the assured until the assured has sustained a loss covered by the policy and has been paid by him in money, or for money expended by him under the policy. The terms of this condition clearly make the contract one of indemnity and must be so regarded within the decisions of this and other courts. *Eberlein v. Fidelity & D. Co.* 164 Wis. 242, 159 N. W. 553; *Stenbom v. Brown-Corliss E. Co.* 137 Wis. 564, 119 N. W. 308; *Wis. Z. Co. v. Fidelity & D. Co.* 162 Wis. 39, 155 N. W. 1081; *Allen v. Ætna L. Ins. Co.* 145 Fed. 881; *Connolly v. Bolster,* 187 Mass. 266, 72 N. E. 981.

That an insurance company as an interested party in the litigation may lawfully participate in the defense of actions against the assured in cases like this is recognized in the decisions of this court. See *Gelo v. Pfister & Vogel L.*

*Co.* 132 Wis. 575, 113 N. W. 69, and cases cited above. Since the insurance company has this legal right, its contract with the assured assuming the obligation specified in the policy to defend actions brought against the assured on claims embraced in it is binding and enforceable between the parties. It is contended by appellant that such agreement by the insurance company to defend any action against the assured on claims covered by the policy, to pay the costs of such litigation, and reserving the right to settle any such claim or suit and thus exclude the assured from having control of these matters, operates as an assumption by the company of the liability for any claim which may finally be established by judgment against the assured and thereby waives the condition of the policy that no action can be maintained on the policy until the assured has actually paid a loss thereunder in money. This claim is predicated on the grounds asserted in some courts in similar actions, such as *Sanders v. Frankfort M., A. & P. G. Ins. Co.* 72 N. H. 485, 57 Atl. 655; *Patterson v. Adan,* 119 Minn. 308, 137 N. W. 1112; *Davies v. Maryland C. Co.* 89 Wash. 571, 154 Pac. 1116, 155 Pac. 1035. An examination of these adjudications shows that they are not in harmony with the decisions on this subject in this court above cited and are at variance with the decisions on the subject in other courts. The reasoning of these cases does not persuade us that they should be followed, and we incline to adhere to what has been held in the decisions in this court on the subject.

It is considered that the circuit court properly held that the garnishee defendant is not indebted to the principal defendant, and that the garnishment action must be dismissed.

*By the Court.*—The judgment appealed from is affirmed.

The following opinion was filed July 13, 1921:

Doerfler, J. I cannot agree with the opinion of the court in this case.

Paragraphs 2, C, and D of the policy give to the insurance company the absolute and exclusive right to defend and contest a cause of action and to make settlements.

When the personal-injury action is begun, and, under the provisions of the policy, the summons is transmitted to the insurance company, the company is confronted with two propositions, namely: first, to assume the defense of the action; second, to decline the defense of the action.

An insurance company can only participate in the prosecution or defense of an action in the event that it has an interest in the same, which interest can only spring from its liability under the policy. If it has no interest and nevertheless defends, then it is an intermeddler, is guilty of maintenance and of the illegal practice of the law; for in order to defend it must hire an attorney at law to represent it, and the act of the attorney becomes the act of the company, and thus the company would be involved in the illegal practice of the law.

Sec. 2586, Stats., explicitly defines who can practice law and the terms and conditions under which a person can be admitted to practice law.

Sec. 2587, Stats., provides for a penalty for the unlawful practice of the law.

A corporation does not come within the purview of the sections referred to, and therefore if it attempts, either directly or indirectly, to practice law, then it violates the provisions of said sections.

Therefore the situation presented is this: When the company assumes the defense, as it did in this case, it does so with the express understanding that it has an interest therein, and in assuming the defense it recognizes its liability, and when it recognizes its liability it binds itself.

On the other hand, if the company assumes the defense of the personal-injury action upon the theory that in the event of the insolvency of the defendant it is not obligated

to pay, then it is committing an illegal act, and this very act would estop it from claiming nonliability. A party cannot obtain advantage in a court by reason of his unlawful act.

This must not be construed to mean that an insurance company like the respondent cannot lawfully insert in an insurance policy a provision such as is contained in paragraph E of the policy. But it is intended, however, to make clear this essential proposition, namely, that when the insurance company assumes the exclusive control of and the defense of an action, then it is estopped under the law from taking advantage of the privileges of paragraph E upon the doctrine stated, that it cannot legally defend an action in which it has no interest.

As is said in *Patterson v. Adan,* 119 Minn. 308, 138 N. W. 282:

"Neither public policy nor legal principles can be invoked against the validity of these provisions, if they mean no more than an undertaking to contest an asserted claim against the assured, for which it is liable when established; but if, under the pretense of an insurance obligation, the company carried on litigation in the name of one who has neither voice nor interest therein, and which does not affect the company itself, because the assured is unwilling or unable to pay if plaintiff is awarded judgment, it would seem the company becomes an officious intermeddler. Public policy does not permit a litigant to so surrender control of his lawsuit to one who has no interest in the cause of action." *Mahr v. Forrestal,* 132 Minn. 336, 156 N. W. 668; *Davies v. Maryland C. Co.* 89 Wash. 571, 154 Pac. 1116, L. R. A. 1916D, 395.

The assured, in taking out a policy of this kind, has in mind the accomplishment of two purposes: first, the creation of a fund out of which a person injured through the involuntary negligence of the assured may be in a degree compensated for such injury; second, a protection to himself from liability under the policy on the happening of an injury. The former consideration is perhaps of greater importance

to the assured and the public than the latter. The public is interested to the extent of having due compensation paid to the injured, so that he may not become a burden or charge upon the community. Such a policy is also designed to inure not only to the benefit of the injured, but in many cases to the benefit of his immediate dependents in case the injury results in death.

It must also be conceded that the insured, in taking out a policy of this kind, has principally in mind that in the event of an accident it may be protected, to the extent of the insurance, from financial embarrassment. Under the opinion of the court the insured would be placed in a position where, in the event of an accident, if it is financially embarrassed and thus in a condition where it is in greatest need of protection, the company would be enabled to relieve itself from liability.

As a result of the majority decision in this case the insurance company can properly claim to have achieved the following:

1. It has been permitted to furnish counsel to defend an action under a policy in which it has no interest and under which it has disclaimed liability.

2. It has vexatiously intermeddled in litigation against public policy, under its assumed rights under a policy in which it has no interest and under which it has been permitted to disclaim liability.

3. It has defeated the main object and purpose of the insurance, which is to provide a fund out of which is to be compensated an injured person for injuries sustained by or through the negligence of the insured.

4. It has escaped liability to the insured during a period of the insured's financial stress, peril, and embarrassment, and at a time when the assured contemplated that the proceeds of the insurance policy would relieve it from such stress, peril, and embarrassment.

5. It has been permitted to do all this without the application on the part of the court of the doctrine of estoppel, designed expressly for the purpose of preventing the company from taking advantage of and profiting by its own wrong and its unlawful acts.

These considerations are also referred to in order to demonstrate that neither the insured nor the insurer could reasonably have had in mind a situation such as was raised in this case, and where, under the decision of the court, the insured would be left practically remediless and the insurer relieved from liability.

So that, in construing paragraph E of the policy, it is reasonable to assume that what the insurance company intended was that the payment of the judgment becomes a condition precedent to liability only in cases where it denies the applicability of the policy to the accident, or that the policy has been breached or has lapsed, and where for these reasons the company declines to defend or recognize its liability under the policy. This view becomes clearer when we consider the second sentence of clause E, which provides: "No such action shall lie under any agreement of the corporation herein contained, unless brought by the assured himself to recover money actually expended by him." This provision last quoted undoubtedly refers to the costs and expenses incurred in the defense of the personal-injury action, and under the very provisions of the policy the only costs and expenses which the insured could pay would be those incurred when it itself defended and when the insurance company declined to defend. *Patterson v. Adan,* 119 Minn. 308, 138 N. W. 281.

A careful examination of the following cases, *Stenbom v. Brown-Corliss E. Co.* 137 Wis. 564, 119 N. W. 308; *Wis. Zinc Co. v. Fidelity & D. Co.* 162 Wis. 39, 155 N. W. 1081; *Eberlein v. Fidelity & D. Co.* 164 Wis. 242, 159 N. W. 553, will disclose the fact that the questions involved

in this case have not been decided by this court in those cases.

I therefore cannot agree with the conclusions in this case.

The following opinion was filed July 14, 1921:

ESCHWEILER, J. (*dissenting*). I agree in the main with what is said by Mr. Justice DOERFLER in his dissent.

When a judgment was directed by the mandate of this court in favor of the plaintiff as against the Kroeger Brothers Company on the first appeal here, the question of liability was settled and determined. There was nothing further that could properly be done on that question by the garnishee defendant. Its duty and its rights as prescribed in the policy then ceased.

The further steps taken by contesting the payment of such adjudicated liability in the bankruptcy proceedings of the Kroeger Brothers Company was an attempt to evade or avoid and no longer a proceeding to contest the question of liability. By undertaking to assist in an effort to defeat the collection of such adjudicated liability the garnishee defendant was assuming to do something which was not its obligation to do under the terms of the policy. By so doing it should be held to have recognized a responsibility on its own part for such liability and should not now be permitted to say to the contrary.

A motion for a rehearing was denied, with $25 costs, on September 23, 1921.