POLZIN and others, Respondents, vs. WACHTL and another, Appellants.

*October 10—November 9, 1932.*

For the appellants there was a brief by *Gorman & Boileau* of Wausau, and oral argument by *E. P. Gorman.*

For the respondents there was a brief by *Genrich & Genrich,* attorneys, and *L. A. Pradt, Jr.* of counsel, all of Wausau, and oral argument by *Mr. Pradt* and *Mr. F. W. Genrich.*

NELSON, J.   On the afternoon of April 12, 1931, the plaintiff Drusilla Maney was driving the automobile of her husband, the plaintiff Jesse Maney, in a northerly direction on state highway 51.   The plaintiffs Naomi Maney, Emmet Olson, and Beatrice Olson were occupants of that car. While that car was proceeding toward Mosinee in Marathon county it was overtaken by defendant Frank Wachtl, who was driving a large interurban bus.   At the same time the plaintiff Walter Polzin, accompanied by his wife, Mabel

Polzin, was driving his automobile in a southerly direction on said highway. The defendant's bus passed the Maney car and then turned to the right in front of it. Immediately thereafter the Maney car swerved to its left across the road and collided with the Polzin car. There was testimony which tended to show that while the bus was passing the Maney car it struck it, or "sideswiped" it, causing an injury to the steering apparatus which caused the car to get out of the control of its driver. The jury found the defendant Wachtl negligent in respect to speed, lookout, and control, and also as to the manner of his passing the Maney automobile. The findings of the jury are not attacked by the appellants.

The defendants contend, however, (1) that the court erred in overruling defendant company's plea in abatement and improperly permitted the company to be joined as a defendant, and (2) that the damages awarded to some of the plaintiffs were excessive, and that said excessive damages resulted from passion and prejudice due to the joinder of the company as a party defendant.

In the view we take of this case only the first contention need be considered.

The defendant Wachtl was, at the time of the accident, engaged as a common carrier in the transportation of passengers and as such was required to file with the Railroad Commission a good and sufficient indemnity bond conditioned "that the company . . . shall be directly liable for and shall pay all damages to persons, at least in the following amounts : . . . that may be recovered against the operator of the vehicle described therein by reason of the negligent use and operation of such vehicle." Sec. 194.14, Stats. 1929. Such a bond had been filed and accepted by the Railroad Commission. That bond had attached thereto a rider which is as follows:

"It is hereby agreed by and between the parties to the attached contract, bond, or insurance policy, that notwithstand-

ing any provisions of the contract therein and regardless of the truth of any of the warranties therein contained, the company (surety or indemnity carrier) shall be directly liable for and shall pay all damages, whether to persons or property, not exceeding $10,000 to any one person, and subject to that limit for each person, the total liability on account of any one accident involving more than one person shall not exceed $50,000 for any one accident that may be recovered against the operator of any motor vehicle hereinafter described by reason of the negligent use and operation of the same; it being the intent of the parties to the said contract, bond, or insurance policy, and it being their agreement, that so long as the said contract, bond, or insurance policy shall be in force the liability prescribed by sec. 194.14, Wisconsin Statutes, shall be fully assumed by the company (surety or indemnity carrier) regardless of anything in said policy inconsistent therewith."

The bond also contained the following "no-action clause:"

"H. No action shall lie against the Company until the amount of damages for which the Assured is liable by reason of any casualty covered by this policy is determined, either by final judgment against the Assured or by written agreement of the Assured, the claimant, and the Company, nor in either event unless suit is instituted within two years after the date of such judgment or written agreement."

The plaintiff contends that the "no-action clause" is inconsistent with and contravenes the specific provisions of sec. 194.14 and therefore is ineffective to postpone the right of the plaintiffs to sue the defendant company until the amount of the damages for which the assured is liable is determined by final judgment against the assured or by written agreement of the assured, the claimant, and the company.

The trial court held that the "no-action clause" herein was in derogation of the terms of the statute in that it subtracted something from the rights of the injured person, and that it must be deemed to be overridden by the terms of the

statute and the rider to the policy which make the defendant company assume the liability prescribed by sec. 194.14. In so holding we think the trial court was in error.

It is very clear that if the "no-action clause" herein is not inconsistent with or does not contravene the provisions of sec. 194.14 or the rider attached to the policy, then, under the decisions of this court, it must be held to be a valid clause in no manner affecting the liability assumed by the defendant company but merely postponing the time when the plaintiffs may bring their action against it.

In *Ehlers v. Automobile Liability Co.* 166 Wis. 185, 164 N. W. 845, which involved a bond given pursuant to the provisions of sec. 1797—63, Stats. 1915, which section was in no respect unlike the material provisions of sec. 194.14 but in which bond no "no-action clause" was contained, it was held that the demurrer of the liability company, based on the contention that the company was not a proper party defendant, was properly overruled. In *White v. Kane,* 179 Wis. 478, 192 N. W. 57, which involved a bond providing "that it (the company) will pay to the assured the amount of any final judgment for damages," but to which was attached a special condition providing that the coverage be extended and made to cover in accordance with the statute of the state of Wisconsin, sec. 1797—63, which action also involved a demurrer interposed on the ground of misjoinder of parties defendant, it was held that the coverage was that required by statute and that the contract was a liability rather than an indemnity contract and that the company therein was a proper party defendant. In that case, however, no "no-action clause" was involved.

Under the law established by *Morgan v. Hunt,* 196 Wis. 298, 220 N. W. 224, and followed in *Grandhagen v. Grandhagen,* 199 Wis. 315, 225 N. W. 935, and *Bergstein v. Popkin,* 202 Wis. 625, 233 N. W. 572, it must be held that

the "no-action clause" herein is valid unless it be in conflict with the provisions of sec. 194.14. The cases just hereinbefore cited, with the exception of *Bergstein v. Popkin, supra,* involved "no-action clauses" which were held not to conflict with sec. 85.25, now sec. 85.93, as it existed prior to the amendment by ch. 467, Laws of 1929. Sec. 85.25 was originally enacted by ch. 341, Laws of 1925, and provided "that the insurer shall be liable to the persons entitled to recover for the death of any person, or for injury to person or property, caused by the negligent operation, maintenance, use, or defective construction of the vehicle described therein, such liability not to exceed the amount named in said bond or policy." After the decisions in *Morgan v. Hunt* and *Grandhagen v. Grandhagen, supra,* the legislature, by ch. 467 of the Laws of 1929, amended sec. 85.25 by inserting after the word "property" contained therein the following language: "irrespective of whether such liability be *in præsenti* or contingent and to become fixed or certain by final judgment against the insured, when" caused, etc. That statute was construed in *Bergstein v. Popkin, supra,* and it was held that a valid "no-action clause" did not conflict with such language. It will be noted that sec. 85.93, formerly sec. 85.25, did not contain any language authorizing the joinder of the insurer of motor vehicles in an action brought against the assured, nor was sec. 260.11 amended so as specifically to permit such joinder until the enactment of ch. 375 of the Laws of 1931. *Bergstein v. Popkin, supra.*

It therefore becomes important, in deciding whether the "no-action clause" herein is in conflict with the provisions of sec. 194.14, to ascertain the legislative intent in providing that the company "shall be directly liable for and shall pay all damages . . . that may be recovered against the operator of the vehicle described therein by reason of the negligent use and operation of such vehicle." The legislative intent may

be determined by construing the language of the statute itself or, in case of doubt or ambiguity, by looking to its legislative history.

We think that the language "shall be directly liable," etc., means and is fully complied with by a policy which embodies a liability contract as distinguished from an indemnity contract. It was clearly never intended to create a liability on the part of an insurance company independent of the liability of the operator of the vehicle. It seems clear that the legislature intended to make as certain as possible, by means of a liability contract of insurance, the collection of a judgment obtained against the operator of the vehicle, to the end that a situation like that which existed in *Glatz v. General Accident, F. & L. Assur. Corp.* 175 Wis. 42, 183 N. W. 683, should not prevent a person from recovering the amount of the liability coverage, rather than to give to the plaintiff the right to join the insurance carrier as a party defendant in the action. If this does not clearly appear from the language of the statute itself, we think that the legislative history conclusively shows that it was not the intention of the legislature to permit a plaintiff to join an insurance carrier as a party defendant against the provisions of its contract with an assured.

We think that we may properly take judicial notice of the fact that shortly before the legislature convened in 1915 "jitney" automobiles and busses had made their appearance in great numbers upon the streets of our larger cities, and that some form of regulation seemed to be imperative. Many jitneys were operated by those who were without financial responsibility and from whom it would have been impossible to collect damages for their negligence.

Rather early in the session, on March 25th, Bill 464 S, which related to the granting of franchises by cities and villages, was introduced. A hearing thereon was held. There-

after, on May 28th, substitute amendment No. 1 S to Bill No. 464 S was offered by the committee on Corporations. This substitute amendment also related to the granting of franchises by cities and villages. On June 24th substitute amendment No. 2 S to Bill No. 464 S was introduced by the committee on Corporations. This bill proposed to create secs. 1797—62 to 1797—68, inclusive, of the statutes, and related to the operation of motor vehicles for the carriage of passengers for hire upon streets and highways. Substitute amendment No. 2 S provided in part as follows:

"Section 1797—63. No person, firm or corporation shall operate any motor vehicle for the purposes described in section 1797—62 unless there shall have been filed with and accepted by the Railroad Commission of Wisconsin a good and sufficient indemnity bond issued by some surety or indemnity company created under the laws of the state of Wisconsin or duly authorized to transact business therein, which said bond shall describe such vehicle; . . . said bond shall be conditioned to the effect that the company issuing the same may be joined as a defendant in any action to recover damages occasioned by the use and operation of the vehicle therein described, and that such company shall be liable for such damages to the amount fixed by the penalty of such bond."

On July 2d Senator Hanson offered amendment No. 1 S to substitute amendment No. 2 S, which amendment proposed to strike out the provision relating to the joinder of the surety or indemnity company and to insert in lieu thereof the following:

Said bond "shall provide that the company issuing the same shall be directly liable for and shall pay all damages . . . that may be recovered against the operator of the vehicle described therein by reason of the negligent use and operation of such vehicle."

Substitute amendment No. 3 S to Bill No. 464 S, offered by the committee on Corporations, provided that "said bond

shall also be conditioned to the effect that the company issuing the same may be joined as a defendant in any action to recover damages occasioned by the negligent use and operation of the vehicle therein described."

Substitute amendment No. 4 S to Bill No. 464 S, offered by Senator Bosshard, provided as follows:

"Said bond shall also be conditioned to the effect that the company issuing the same may be joined as a defendant in any action to recover damages occasioned by the negligent acts of the use and operation of the vehicle therein described while being operated," etc.

Amendment No. 1 S to substitute amendment No. 2 S to Bill No. 464 S, hereinbefore mentioned, was adopted, and substitute amendment No. 2 S, as amended, was, on July 24th, duly adopted. All of the other substitute amendments were rejected. It appears, therefore, that the language contained in substitute amendment No. 2 S which provided that the bond should be conditioned to the effect that the company issuing the same might be joined as a defendant in any action to recover damages, was deliberately rejected by the Senate and the language "shall be directly liable for and shall pay all damages . . . that may be recovered against the operator of the vehicle described therein by reason of the negligent use and operation of such vehicle," was substituted therefor.

When the bill reached the Assembly a substitute amendment was there offered which contained a provision permitting the company to be joined as a defendant in any action to recover damages. This amendment was rejected. When the bill was finally passed by the Assembly it was amended in some respects not material to this controversy. Upon its return to the Senate an attempt was again made by substitute amendment No. 5 S, offered by Senator Bosshard, to provide among other things for the joinder of the company in any action to recover damages, which substitute amendment was

rejected, and the act finally approved. Ch. 546, Laws of 1915.

Considering the rather plain and obvious meaning of the language of the act, together with its legislative history, it seems very clear that the legislature did not intend by the language "directly liable for . . . all damages that may be recovered against the operator of the vehicle" to provide that the insurance carrier might be joined as defendant. The action of the legislature in rejecting all of the specific provisions relating to the joinder of an insurance company in an action cannot be squared with the contention that the words "directly liable" permit the joinder of the insurance company over its objection where its policy contains a valid "no-action clause."

Since the joinder of the company in this action against its objection and in violation of its rights under its "no-action clause" was prejudicial to it, *Bergstein v. Popkin, supra,* and *Pawlowski v. Eskofski, ante,* p. 189, 244 N. W. 611, we conclude that the trial court erred in overruling the defendant company's plea in abatement.

Since the action must be reversed for a new trial, we deem it unnecessary to consider whether the damages found by the jury are excessive.

*By the Court.*—Judgment reversed, with directions to grant a new trial.

FRITZ, J., dissents.