NASH, Respondent, v. GIFFEN, State Supt. of Public Instruction, et al, Appellants.

(246 N. W. 299.)

(File No. 7459.    Opinion filed January 16, 1933.)

*M. Q. Sharpe,* Attorney General, *James Brown* and *R. F. Drewry,* Assistant Attorneys General, for Appellants.

*Miller & Shandorf,* of Mitchell, for Respondent.

RUDOLPH, P. J. This case involves the so-called "new course of study." The facts are stipulated. Material facts are as follows: E. C. Giffen, Superintendent of Public Instruction, for several years last past has employed Dr. Herbert Bruner of Columbia University to assist him (Giffen), as Superintendent of Public Instruction, in the preparation of courses of study in the branches taught in the graded schools of the state, as provided in subdivision 3 of section 3, chapter 138, Laws of 1931. There has been paid to Dr. Bruner some $10,000 out of the state institute fund for salary and expenses, and it is the intention to continue paying him out of this fund for his work. Dr. Bruner, in the course of his employment, attended educational meetings and conferences, and meetings of educational committees, called by the Superintendent of Public Instruction from time to time within the state, and there

talked and conferred with reference to the assembling and arrangement of materials, now contained in the volumes and courses of study that have been prepared; his work consisted chiefly in advising said committee with reference to construction of said courses, and, with the assistance of his staff and library in New York City, putting the material compiled by said committee into final form, as now contained in said courses of study. The courses of study so prepared have been prepared for use by the teachers in teaching in the common schools of the state, and will also be used in county normal institutes, educational conferences, and meetings in training and preparing the school teachers of the state to use said courses of study in their teaching work in the common schools of the state. These courses of study have been adopted and approved by a majority of the county superintendents of the state. Contracts have been entered into by the director of purchasing and printing with the State Publishing Company of Pierre and Brown & Saenger of Sioux Falls for the printing of the various courses of study at an agreed price of something over $6,000, and it is the intention of the defendants to pay the contract price out of the state institute funds.

The trial court entered a judgment restraining the defendants from making any further payments out of the state institute fund to Dr. Bruner or "any one else for any work or assistance rendered or expense incurred in preparing any of the courses of study * * * or for the payment for the cost of typewriting, mimeographing, printing, publishing, selling or distributing said courses of study." The defendants have appealed from this judgment.

The state institute fund came into existence by virtue of chapter 181, Laws of 1919. Section 18 of that act provides in part as follows: " * * * All fees received by the Superintendent of Public Instruction shall be by him covered into the state treasury and credited to a fund to be designated as 'The State Institute Fund.' The moneys in the State Institute Fund shall not revert into the state treasury, but shall accumulate from year to year, and shall be used for the purpose of assisting County Superintendents of schools in conducting annual normal institutes and to employ competent lecturers and speakers for educational meetings and conferences called by the Superintendent of Public Instruction

for the promotion of education within the state; and the state institute fund is hereby appropriated for that purpose and shall be paid out upon warrants drawn by the State Auditor on duly itemized vouchers approved by the Superintendent of Public Instruction."

The above-quoted section 18 of chapter 181, Laws of 1919, was re-enacted in its entirety by the 1931 Legislature, as section 247 of chapter 138, Laws of 1931. This 1931 law contains other provisions relative to the powers and duties of the Superintendent of Public Instruction, which we believe are material in our consideration of this case. Subsection 3 of section 3 of said chapter 138, Laws of 1931, is as follows: "To prepare and submit to the County Superintendents of Schools in this state uniform courses of study in the branches taught in the graded schools of the state; no such course of study shall be adopted without the approval of a majority of the County Superintendents of the state."

Subdivision 15 of section 2 of the 1931 Act provides: "To prepare and cause to be published such bulletins as may be deemed of value to the educational interests of the state; a charge may be made for copies thereof furnished to non-residents and to colleges and educational institutions not under the supervision of the Superintendent of Public Instruction; the said bulletins shall also be furnished to counties and school districts at the actual cost of printing and delivery; moneys received from the sale of such bulletins shall be paid by the Superintendent of Public Instruction to the State Treasurer and the same shall be credited to the institute fund."

On January 10, 1930, the Attorney General's office rendered an opinion addressed to E. C. Giffen, State Superintendent of Public Instruction, as follows:

"I have for consideration your letter of January 9th, 1930, in which you request my opinion upon the question of whether or not, under Section 18 of Chapter 181 of the 1919 Session Laws, you can use the fund thereby provided for the purpose of paying expenses and clerical help, mimeographing and distributing to the various teachers attending annual normal institutes, institute conductors, lecturers and speakers, a course of study which will be used in South Dakota schools during the next school term, and

also whether you could pay the expenses of the April conference for preparing the next normal institute course, and also the expenses of various committee chairmen who will make reports and deliver discussions as speakers at certain conferences which you will call in connection with the state course of study.

"According to your statement of facts, all of the money which you may expend from the fund above specified will be used in assistance of county superintendents in conducting their annual normal institute work either as a part of the preparation for said institutes and/or for actual use at the Institute sessions, and/or paying expenses of persons who will deliver reports and discussions and/or lectures at conferences called by you for the purpose of promotion of education within this state.

"Under Section 18 of Chapter 181 of the 1919 Session Laws, it is provided that certain fees shall be collected by the State Superintendent in connection with the application, issuance, renewal, and/or validation of various classes of teachers' certificates. It is then further provided by said section as follows:

" 'All fees received by the Superintendent of Public Instruction shall be by him covered into the state treasury and credited to a fund to be designated as "The State Institute Fund." The moneys in the state institute fund shall not revert into the state treasury, but shall accumulate from year to year, and shall be used for the purpose of assisting county superintendents of schools in conducting annual normal institutes and to employ competent lectures and speakers for educational meetings and conferences called by the Superintendent of Public Instruction for the promotion of education within the state; and the state institute fund is hereby appropriated for that purpose and shall be paid out upon warrants drawn by the State Auditor on duly itemized vouchers approved by the Superintendent of Public Instruction.'

"While this section identifies the fund with the name of 'The State Institute Fund,' it is plain from its provisions that the State Superintendent of Public Instruction is given specific authority to use it for other purposes. In fact, two distinct, specific purposes for which the fund is provided are mentioned as follows: 'the purpose of assisting county superintendents of schools in conducting annual normal institutes' and 'to employ competent lecturers

and speakers for educational meetings and conferences called by the Superintendent of Public Instruction for the promotion of education within this state.'

"Both of these purposes are stated in general terms and the Superintendent of Public Instruction should be given some latitude and discretion in using the fund so as to best accomplish the purposes for which it was appropriated by the legislature.

"It is my opinion that you are entitled to use the fund for the clerical help, mimeographing, and printing of the material used for assistance of the county superintendents in conducting the normal institutes, and for the proper assembling and preparation of that material.

"According to your statement of facts, the prime purpose of so printing and distributing this material is for the instruction of the teachers at normal institutes so that they may better instruct pupils in accordance with the systems adopted by institute conferences. Plainly this expense would then come within the purview of the appropriation. I am also of the opinion that you may use the fund for payment of the employment of persons whom you may employ as speakers at the various conferences which you apparently have authority to call for the promotion of education within this state, whether the last mentioned conferences are in connection with institute assistance or not, as the statute plainly provided for the use of the fund under your discretion for these additional purposes."

See Biennial Report, Attorney General, 1929-1930, page 50.

When the 1931 Legislature was in session, a joint investigating committee was appointed which investigated the office of the Superintendent of Public Instruction. The report of that committee is found in the House Journal, Twenty-second Legislative Session, page 585.

The respondent contends that the report of the joint investigating committee is no part of the record in this case, and that this court is without authority to consider it. This court in the early case of Somers v. State, 5 S. D. 321, 58 N. W. 804, 805, said: "It is doubtless true that courts will not ordinarily take judicial notice of the legislative proceedings, as shown by the journals of

the different houses; but it is equally true that, where a question is presented which can only be intelligently decided upon information contained in such journals, the court, of its own motion, will examine them, if necessary, and take judicial notice of their contents. This doctrine was very directly held and acted upon in Edger v. Board [of Com'rs of Randolph County], 70 Ind. 331, where it was announced that 'the respective journals of the senate and house of representatives, containing the proceedings in reference to a bill enacted into a statute, may be looked to by the courts to ascertain the intention of the legislature in enacting such a statute, if it be ambiguous.' In Blake v. [National City] Bank, 23 Wall. 307 [23 L. Ed. 119], the court determined the meaning and effect of an act of congress from what it found in the journals of the senate and house. In Fosdick v. Village of Perrysburg, 14 Ohio St., 472, the same license was indulged, where, as in the case at bar, it was important to ascertain the intent of the legislature with reference to another act."

■ The rule announced in this early case is not in conflict with the decisions of this court in the case of Krakowski v. Waskey, 33 S. D. 335, 145 N. W. 566; Ex parte Hoese, 48 S. D. 337, 204 N. W. 174. The rule announced in these last two cases is simply that an act of the Legislature, as enrolled and certified to by the respective officers and approved by the Governor, is conclusive upon the courts, and that it is not competent for the courts to consider any matter found in the journals tending to impeach the validity of an act. There is no attempt in this case to impeach the validity of any act; the object here is to determine the intention of the Legislature, in so far as it concerns the appropriation of moneys in the State Institute Fund. A very recent case, holding that the court may look to legislative history of a statute to determine the legislative intent, is the case of Polzin v. Wachtl (Wis.) 245 N. W. 182. Legislative journals are official records of a branch of the government co-ordinate with the court, and it is the function of the court to know and interpret the laws enacted by this co-ordinate branch of government. It would seem only logical, therefore, that the court, if it can be aided in interpreting a particular law by the official record of the Legislature, should turn to that record and judicially notice its contents.

■ We are of the opinion that in this case we are entitled to judicially notice the report of this special investigating committee, which appears in the Journal of both the Senate and the House, and which is as follows:

"Superintendent of Public Instruction

"In the investigation of this office and department your Committee finds that while there was about the same amount of money expended during the past biennium as formerly, there has been a large expenditure for special expenses, salaries and wages to committees and individuals in and out of the state preparing a 'Course of Study.' We find that the amount expended for the said 'Course of Study' up to the present time is about $17,000.00 and that the cost of this 'Course of Study' when finished will be about $20,-000.00, as estimated by the Superintendent of Public Instruction.

"We further find that in order to meet this extraordinary expense the Superintendent of Public Instruction has shortened the length of the various County Institutes from three days, the length of the former County Institutes, to two days, during the present biennium. He has further reduced the cost of the County Institutes by securing the talent for these institutes at a lower salary and by these methods has succeeded in keeping the total amount expended from the Institute Fund at about the same figure as was expended during previous bienniums.

"Your Committee find that the law of this state at the present time is as follows: Section 18 of Chapter 181 of the 1919 Session Laws:

" 'All fees received by the Superintendent of Public Instruction shall be by him converted into the state treasury and credited to a fund to be designated as "The State Institute Fund." The moneys in the state institute fund shall not revert into the state treasury, but shall accumulate from year to year, and shall be used for the purpose of assisting county superintendents of schools in conducting annual normal institutes and to employ competent lecturers and speakers for educational meetings and conferences called by the Superintendent of Public Instruction for the promotion of education within the state; and the state institute fund is hereby appropriated for that purpose and shall be paid out upon warrants drawn by the State Auditor on duly itemized vouchers approved by the Superintendent of Public Instruction.'

"Your Committee finds that the Attorney General's office of this state issuing an unanimous opinion passed on the expenditures as above set out and upon the law of this state as mentioned. Said opinion was to the effect that the said expenditure was a legal expenditure.

"Your Committee therefore reports as its conclusion:

"That there was no illegal expenditure of moneys found to have been made by this department, further, your Committee feels that the law as now operating in this state does not sufficiently define and safeguard the uses for which the institute fund may be spent and therefore recommends that the Joint Committee on Education prepare and submit suitable and proper amendments.

"Your Committee has filed all evidence taken in this investigation together with a copy of this report in the office of the Secretary of State.

"Dated this 11th day of February, A. D. 1931.

"Joint Investigating Committee,

"Henry C. Mundt,

"Chairman House Committee.

"H. C. Westphal

"S. G. Gilliland

"W. C. Hermann

"Chairman Senate Committee.

"Warren Welch

"Harold W. King."

Chapter 138, Laws of 1931, was passed several days after the report of the special investigating committee was adopted by both the Senate and the House.

In view of this legislative history, What appears to be the legislative intent in the re-enactment of section 18, chapter 181, Laws of 1919, as a part of said chapter 138, Laws of 1931? There appears to us to be but one reasonable answer. That is, that in the re-enactment of section 18, chapter 181, Laws 1919, as section 247, chapter 138, Laws 1931, the Legislature intended the effect thereof to be in accordance with the construction placed thereon by the Attorney General. Any other answer, in our opinion, would presuppose that the Legislature did not know what it was doing, or what the bill as passed contained.

However, in addition to re-enacting said section 18, the Legislature created and enacted subdivision 3 of section 3, and subdivision 15 of section 2, chapter 138, Laws of 1931, thereby giving to the Superintendent of Public Instruction the power to prepare and submit to county superintendents of schools uniform courses of study, and made it a part of his duties to prepare bulletins as may be deemed of value to the educational interest of the state, and the money received from the sale of these bulletins to be credited to the institute fund.

The respondent contends that the opinion of the Attorney General shows it was not based upon the facts as they now appear. With this we do not agree. The opinion refers specifically to the courses of study being prepared, and there can be no question under the facts, as here stipulated, that these courses of study "will be used in county normal institutes, educational conferences and meetings," and these were the facts upon which the opinion was based. The opinion approves the expenditure from the fund to employ competent lecturers and speakers for educational meetings and conferences, and the stipulated facts recite that Dr. Bruner in the course of his employment attended educational meetings and conferences and there talked and conferred, etc. The opinion approves the expenditure for printing and the proper assembling and preparation of material. We cannot conclude other than that the opinion of the Attorney General authorized the expenditures as they now appear in the stipulated facts. That opinion of the Attorney General was known to the Legislature, and the expenditures made under that opinion were investigated by the Legislature, prior to the enactment of the 1931 law. We are of the opinion that, by the enactment of the 1931 law, it was the intention of the Legislature to appropriate the moneys of the state institute fund for the purposes authorized in the opinion of the Attorney General, and that those purposes are the same purposes for which the money has been, and is, intended to be expended under the facts as stipulated in this case.

The judgment appealed from is reversed, with instructions to the trial court to enter judgment dismissing the complaint.

POLLEY and WARREN, JJ., concur.

CAMPBELL, J., concurs in the result.

ROBERTS, J., disqualified and not sitting.