DECADE'S MONTHLY INCOME & APPRECIATION FUND, a limited partnership, by it's general partners, Jeffrey Keierleber and Harold Barian, d/b/a Decade Companies, a Wisconsin partnership, Decade Securities Corporation and Decade Properties, Inc., Plaintiffs-Appellants,

v.

WHYTE & HIRSCHBOECK, S.C. , Alvin Kriger and Attorneys' Liability Assurance Society, Inc., Defendants-Respondents-Petitioners.

Supreme Court

*No. 90-2793. Oral argument September 2, 1992.—Decided February 18, 1993.*

(Also reported in 495 N.W.2d 335.)

For the defendants-respondents-petitioners there were briefs by *Clay R. Williams, Robert L. Gegios, Ste-*

*phen W. Pasholk* and *Gibbs, Roper, Loots & Williams, S.C.,* Milwaukee and oral argument by *Clay R. Williams.*

For the plaintiffs-appellants there was a brief by *Matthew J. Flynn, Michael G. Carter, Coleen A. Scherkenbach* and *Quarles & Brady,* Milwaukee and oral argument by *Mr. Flynn.*

HEFFERNAN, CHIEF JUSTICE. This is a review of a decision of the court of appeals, *Decade's Monthly Fund v. Whyte & Hirschboeck,* 164 Wis. 2d 227, 474 N.W.2d 766 (Ct. App. 1991), reversing a summary judgment of the circuit court for Milwaukee county, Gary A. Gerlach, Judge, that held that Decade's Monthly Income and Appreciation Fund (Decade's) could not maintain a direct action malpractice lawsuit against Attorneys' Liability Assurance Society, Inc. (ALAS), the malpractice insurer of the law firm of Whyte & Hirschboeck. The court of appeals held that Wisconsin's direct action statutes, sec. 632.24 and 803.04(2), Stats., authorized Decade's suit although Whyte & Hirschboeck's policy was one for indemnity, not liability.

Decade's brought a professional malpractice action against Whyte & Hirschboeck and Alvin Kriger (a former shareholder of the law firm) seeking damages for the alleged failure of the parties to take certain required actions in connection with a proposed public offering of a security issue. Decade's joined ALAS as a defendant alleging that ALAS was directly liable to the plaintiffs as the issuer of a policy of insurance covering any loss sustained by Whyte & Hirschboeck or its lawyers.

The circuit court granted summary judgment to ALAS pursuant to sec. 802.06(2) , Stats., concluding that the policy was one of indemnity and not liability and

thus did not fall within the permitted scope of secs. 632.24 and 803.04(2)(a), Stats.

The court of appeals reversed. Though the court agreed with the circuit court's determination that the insurance policy was one of indemnity, the court of appeals stated that Wisconsin's direct action statutes apply to both kinds of insurance policies. ALAS has petitioned for review in this court. We granted review and conclude that Decade's may maintain a direct action against ALAS. We therefore affirm the court of appeals.

This case was decided on summary judgment and there are no material facts in dispute. The sole question before this court is whether secs. 632.24 and 803.04(2)(a) permit a direct action to be maintained against an indemnity insurer. The construction of statutes and their application to insurance contracts are, in the absence of extrinsic evidence, questions of law which we review de novo. *Pulsfus Poultry Farms v. Town of Leeds,* 149 Wis. 2d 797, 803-04, 440 N.W.2d 329 (1989); *Martin v. Milwaukee Mut. Ins. Co.,* 146 Wis. 2d 759, 766, 433 N.W.2d 1 (1988).

The circuit court and the court of appeals began their analysis with a determination whether the contract in dispute was one for indemnity or liability insurance. The nature of a particular insurance contract is frequently discernible by the parties' choice of contractual language. 6B Appleman, *Insurance Law and Practice,* sec. 4261 (1979). Wisconsin courts have long distinguished between indemnity policies that cover losses actually paid by the insured and liability policies that insure against losses arising from liability to a third party. *Agnew v. American Family Mut. Ins. Co.,* 150 Wis. 2d 341, 348, 441 N.W.2d 222 (1989) (citing cases).

Both courts construed the instant contract to be one of indemnity; the parties' consistent reference to the

contract as one of indemnity and the plain language of paragraph IV. 8 of the policy support such a conclusion. *Decade's Monthly Fund,* 164 Wis. 2d at 231. Specifically, paragraph IV. 8 reads as follows:

> Any payments by the Company to the ASSUREDS shall be made in Chicago, Illinois in U.S. Dollars, except that if the loss is incurred by the ASSUREDS in a currency other than U.S. Dollars, the amount payable to the ASSUREDS in U.S. Dollars shall be determined by the opening dollar buying rate for such currency in London, England on the date or dates *on which the loss is actually paid by the ASSUREDS.*

(Emphasis added.)

Although we agree that the instant policy was one of indemnity, we do not find that aspect of an insurance contract to be determinative of whether a third party may maintain a direct action against an insurer. We focus our attention instead on the scope of secs. 632.24 and 803.04(2)(a), Stats. We conclude from the legislative history of these statutes that the legislature intended sec. 632.24, permitting direct action against insurers, to apply to both indemnity and liability insurance contracts if they provide insurance for damages caused by negligence.

ALAS argues that the plain language of sec. 632.24, Stats. requires this court to distinguish between negligence arising under liability and indemnity policies. The statute provides:

> **Direct action against insurer.** Any bond or policy of insurance covering liability to others for negligence makes the insurer liable . . . to the persons entitled to recover against the insured . . . irrespective of whether the liability is presently established or is

contingent and to become fixed or certain by final judgment against the insured.

Accordingly, ALAS contends that the statute applies only to those actions involving policies that "cover[ ] liability to others."[1]

ALAS points to the positioning of sec. 632.24, Stats. under subchapter III which is titled "LIABILITY INSURANCE IN GENERAL"[2] as further evidence of the legislature's intent to limit the application of the section to liability policies. Construing other sections that are *in pari materia* with sec. 632.24, ALAS asserts that the legislature expressly limited the meaning of the term "liability" as used in subchapter III to distinguish it from indemnity policies.[3]

Decade's, to the contrary, urges us to consider two different phrases in the statute. First, the statute expressly includes all insurance policies covering liability to others for *negligence.* Second, Decade's points to the statute's concluding sentence which extends the scope of application to all forms of liability "irrespective of whether the liability is presently established or is *contin-*

[1] This court has refused to subscribe to such a narrow interpretation of the word "indemnity" as used in sec. 631.43(1), Stats. *Agnew,* 150 Wis. 2d at 347–48. The *Agnew* court rejected American Family's argument that the phrase "promise to indemnify" be interpreted to exclude liability insurance, reasoning instead that the words "indemnity" and "indemnify," have been used "to refer to all types of insurance policies." *Id.*

[2] It should be noted that such chapter headings of chapter 375 Laws of 1975 were placed in the bill by the legislature and are not merely revisor's titles or captions.

[3] *See, e.g.,* Committee Comment to sec. 632.23, Stats., (1975), reprinted in Wis. Stat. Ann. at 227 (West 1980) ("This continues s. 204.295, *but only as applied to liability coverage.*") (Emphasis added.)

*gent and to become fixed or certain by final judgment against the insured.*" (Emphasis added.)

Our aim in construing statutes is to determine the intent of the legislature. *State v. Duychak,* 133 Wis. 2d 307, 316, 395 N.W.2d 795 (Ct. App. 1986). After reviewing the legislative history of sec. 632.24, Stats., we conclude that the weight of the available evidence supports Decade's proposed construction.

Section 632.24's statutory roots can be found in the chapter 341, Laws of 1925, creating sec. 85.25, Stats., which applied to "any bond or policy of insurance covering liability to others" but only as to injuries arising out of "the operation of a motor vehicle."[4] The statute was enacted following this court's decision in *Glatz v. General Accident, Fire & Life Assurance Corporation,* 175 Wis. 42, 183 N.W. 683 (1921), in which an injured third party, left with an insolvent defendant, was prohibited from seeking damages from the defendant's indemnity policy insurer. *Glatz* , 175 Wis. at 45.[5]

Despite what ALAS asserts to be the plain meaning of the phrase "liability to others," Wisconsin courts have consistently applied sec. 85.25, and its successor stat-

---

[4] The complete text of ch. 341, the Laws of 1925, section 85.25 provided:

> Any bond or policy of insurance covering liability to others by reason of the operation of a motor vehicle shall be deemed and construed to contain the following conditions: That the insurer shall be liable to the persons entitled to recover for the death of any person, or for injury to person or property, caused by the negligent operation, maintenance, use, or defective construction of the vehicle described therein, such liability not to exceed the amount named in said bond or policy.

[5] Section 204.30(1) was enacted in conjunction with sec. 85.25 specifically to address the *Glatz* decision. The statute, a predecessor to sec. 632.22, provided for direct actions against insurers in the event of bankruptcy.

utes, to both liability and indemnity insurance contracts.[6] In *Fanslau v. Federal Mutual A. Ins. Co.*, 194 Wis 8, 215 N.W. 589 (1927), the court stated that it was not "the legislative purpose to deprive insurance companies of the right to limit their coverage or to issue such contracts of insurance or indemnity as they may choose." *Fanslau,* 194 Wis. at 10. Rather, the court continued, the purpose or effect of sec. 85.25 was "to permit persons who sustain injuries as the result of automobile accidents to join as a defendant the insurance company which has issued a policy of insurance to the owner of the automobile *insuring or indemnifying the owner from loss* as a result of the particular accident." (Emphasis added.) *Id.* at 11. In other words, "[t]he fact that the policy is limited to indemnity only does not take it out of the provisions of sec. 85.25." *Ducommun v. Inter-State Exchange,* 193 Wis. 179, 186, 212 N.W. 289, *reh. den.,* 193 Wis. 185, 214 N.W. 616 (1927). Thus from the very inception of the legislation, Wisconsin courts have refused to distinguish between liability and indemnity contracts where automobile accidents were concerned.

Just four years after the statute's enactment, the legislature amended sec. 85.25, renumbered sec. 85.93, Stats., to guarantee the imposition of liability on insurers "irrespective of whether such liability be in praesenti or contingent and to become fixed or certain by final judgment against the insured. . . ." The amendment explicitly overturned *Morgan v. Hunt,* 196 Wis. 298, 220 N.W. 224 (1928), in which the court upheld a policy

---

[6] *See, e.g., Fanslau v. Federal Mutual A. Ins. Co.,* 194 Wis. 8, 215 N.W. 589 (1927); *Ducommun v. Inter-State Exchange,* 193 Wis. 179, 212 N.W. 289, *reh. den.,* 193 Wis. 185, 214 N.W. 616 (1927); *Barteck v. Rotter,* 197 Wis. 303, 222 N.W. 221 (1928) (affirmance by divided court); *Cords v. State,* 62 Wis. 2d 42, 214 N.W.2d 405 (1974).

provision that fixed the time when liability under sec. 85.25 might be imposed.[7] *Morgan,* 196 Wis. at 301. In prohibiting these so-called "no-action" clauses, the legislature reaffirmed its commitment to impose liability directly on insurance companies for injuries sustained from motor vehicles.

Decade's asserts that the legislature did not address the problem of "no-action" clauses until the 1931 amendment to sec. 260.11, predecessor to sec. 803.04, Stats. In support of this proposition, Decade's cites this court's 1930 decision in *Bergstein v. Popkin,* 202 Wis. 625, 233 N.W. 572 (1930), upholding a "no-action" provision, as evidence that the 1929 amendment to sec. 85.25, Stats., related to indemnity policies, not "no-action" clauses. The 1929 legislative drafting notes, however, clearly link the legislature's decision to amend sec. 85.25 to the *Morgan* and *Bro* decisions upholding "no-action" clauses. *See supra* note 7. In fact, the holding in *Bergstein* was itself later superceded by the 1931 amendment to sec. 260.11, Stats. We are not persuaded by Decade's argument on this point and because our holding herein does not rely solely on this portion of sec. 632.24, Stats., we do not address the issue further.

Section 85.93, later renumbered sec. 204.30(4), Stats., remained substantially unchanged until 1971, at which time the legislature broadened the statute to

---

[7] *See* Notes by Mr. Howard Ohm, Chief, Legislative Reference Library (prepared after the proposal was introduced):

This act an amendment to a law enacted in 1925 . . . to make it possible for a person injured in an automobile accident to sue the insurance company directly. This held in *Bro v. Standard Accident Ins. Co.,* 194 Wis. 293, *Morgan v. Hunt,* 196 Wis. 298, and other cases not to bar clauses in insurance policies to the effect that the insurer shall become liable only upon final determination of the liability of the insured. *This bill intended to get away from these decisions.* (Emphasis added.)

encompass all accidents arising from *negligence,* rather than focusing solely on injuries arising from motor vehicles.[8] The legislative purpose that had led initially to the enactment of sec. 85.25 was applied to the public's growing concern over the impact of negligence actions generally. Specifically, these purposes, as recited by the *Ducommun* court in 1927, included the desire to:

> "save litigation and reduce the expense by determining the rights of all parties in a single action which is usually defended by the insurance carrier. [To] expedite the final settlement of litigation and the final payment to the injured person, if he be entitled to recovery. [To] place the burden upon the insurance carrier who has been compensated in advance for its liability to pay the damage assessed for such injuries to person and damage to property as have been caused by actionable negligence on the part of the person insured."

*Ducommun,* 193 Wis. at 185.

Judicial economy and the efficient administration of justice of which the *Ducommun* court wrote are as much a concern now as in 1927.[9] Furthermore, direct actions shield the third party from the contractual agree-

---

[8] In addition to broadening the statute's scope, the amendment reiterated the legislature's intent that "no-action" clauses not be given legal effect. Specifically, the amendment provided that "[t]he right of direct action . . . shall exist whether or not the policy or contract of insurance contains a provision forbidding such direct action."

[9] We find ALAS' discussion of the public policy principles justifying direct actions over providers of motor vehicle insurance to be misleading as compared with malpractice cases. First, ALAS compares the number of motor vehicle accidents nationwide with the number of professional malpractice cases statewide. Second, ALAS considers only professional malpractice cases rather than

ment reached between the insured and the insurer. The parties in contractual privity are free to set the terms and conditions of their agreement without affecting the right of third party recovery. Accordingly, this court has held the terms and conditions of the direct action statute, sec. 632.24, Stats., to be imposed with the same force and effect as if printed in the insurance contract itself, irrespective of whether the parties have contracted for indemnity or liability coverage. *Kujawa v. American Indemnity Co.*, 245 Wis. 361, 366, 14 N.W.2d 31 (1944) (in reference to sec. 85.93, Stats.).[10]

Whether ALAS is in fact liable to Decade's for Whyte & Hirschboeck's alleged negligence is an issue unrelated to the contractual agreement between ALAS and the insured and whether a direct action may be brought. In enacting sec. 632.22, Stats., the Wisconsin legislature chose specifically to protect third parties in the event of an insured party's bankruptcy.[11] Likewise, in amending sec. 632.24, Stats., the legislature extended similar protection to third parties who are injured by an insured's negligence. Because ALAS issued a policy of insurance to Whyte & Hirschboeck covering negligence,

---

all negligence actions brought in Wisconsin courts. The legislature amended sec. 632.24 to include all negligence actions.

[10] *See also Cords v. State*, 62 Wis. 2d at 55 ("it is immaterial for purposes of sec. 204.30(4), Stats., whether an insurance policy is denominated an indemnity or a liability policy . . ..") (citing *Ducommun*).

[11] Section 632.22, Stats., provides:

**Required provisions of liability insurance policies.** Every liability insurance policy shall provide that the bankruptcy or insolvency of the insured shall not diminish any liability of the insurer to 3rd parties and that if execution against the insured is returned unsatisfied, an action may be maintained against the insurer to the extent that the liability is covered by the policy.

the insurer may be held directly liable to Decade's under sec. 632.24.

Citing this court's decision in *Ott v. All-Star Ins. Corp.*, 99 Wis. 2d 635, 299 N.W.2d 839 (1981), ALAS contends that Wisconsin case law clearly forecloses reaching this result. In *Ott,* we distinguished between liability insurers and indemnity reinsurers, allowing third party direct actions against the first but not the second. ALAS asserts that the court's decision rested on the liability/indemnity distinction and thus controls the dismissal of Decade's direct action. Because *Ott* concerned *reinsurance,* not insurance, and was therefore not subject to the same statutory provision, we find its holding inapposite to the instant dispute. Moreover, we believe that ALAS infers too much from the distinction drawn by the *Ott* court. The concept of liability reinsurance is meaningless; re-insurance by definition attaches only after the insurer has itself suffered an actual loss. In *Ott,* the "reinsurance" was more than that. It separately covered the original insurance company for liability in the event the original insurer did not exercise good faith in securing a settlement and consequently a judgment was returned in excess of the original insured's coverage. The real issue in *Ott* was whether a direct action could be maintained against an insurance company that covers the liability of the insured for the insured's own negligence. In *Ott,* as with today's ruling, this court answered in the affirmative.

ALAS further cites to *Eberlein v. Fidelity & Deposit Co.*, 164 Wis. 242, 245, 159 N.W. 553 (1916) (payment of loss by the assured is a "condition precedent to the [assured's] right to maintain an action" on an indemnity policy); and *Hoven v. Employers' Liability Assurance Corp.*, 93 Wis. 201, 208, 67 N.W. 46 (1896) (actual loss is not a condition precedent for bringing an action under a

677

policy that "contracts to indemnify the assured against *liability*") as evidence that Wisconsin precedent does not permit direct actions in cases such as the one before us. However, these cases predate the direct action statutes by more than a decade. Accordingly, these decisions are irrelevant to the construction of the later enacted statute.

In order to commence and maintain a direct action against ALAS, Decade's must meet the requirements of both the substantive and the procedural direct action statutes. We have already determined that sec. 632.24, Stats., permits Decade's bringing of the action. Decade's action also meets the procedural requirements of sec. 803.04(2)(a), Stats.

Section 803.04(2)(a) sets forth the standards for bringing a direct action against an insurer in a negligence action. Specifically, the statute provides that before being joined as a defendant ALAS must meet at least one of the following criteria: (1) have an interest in the outcome of the controversy adverse to the plaintiff or any of the parties; (2) assume or reserve the right to control the prosecution, defense or settlement of the action; (3) agree to prosecute or defend said action; or (4) agree to pay the defendant's litigation costs.[12] The court

---

[12] Section 803.04(2), Stats., provides in relevant part:

(2) NEGLIGENCE ACTIONS: INSURERS. (a) In any action for damages caused by negligence, any insurer which has an interest in the outcome of such controversy adverse to the plaintiff or any of the parties to such controversy, or which by its policy of insurance assumes or reserves the right to control the prosecution, defense or settlement of the claim or action, or which by its policy agrees to prosecute or defend the action brought by plaintiff or any of the parties to such action, or agrees to engage counsel to prosecute or defend said action or agrees to pay the costs of such litigation, is by this section made a proper party defendant in any action brought by plaintiff in this state on account of any claim against the insured. . . .

of appeals determined that under the terms of the policy issued to Whyte & Hirschboeck ALAS met all four of the listed elements and thus could properly be joined as a party defendant to the action. *Decade's Monthly Fund,* 164 Wis. 2d at 235. Because the policy issued to Whyte & Hirschboeck contained the following provisions, we agree with the court of appeals.

> SECTION 5(e): No claim shall be settled by any ASSURED without the consent of the Company . . ..

> SECTION 5(f): The company shall have the right and be given the opportunity to approve in advance counsel selected by such ASSURED to defend in any such claim, suit or proceeding and to require the ASSURED to revoke such counsel's appointment.

> SECTION 6: The Company agrees that it will pay all costs, charges and expenses (including without limitation reasonable attorneys' fees) incurred by the ASSUREDS in connection with the defense of any claim covered hereunder.

We construe these provisions to give ALAS control over settlement decisions, litigation costs and selection of counsel. Whether the insurer's control is indirect or direct is immaterial to the provisions of sec. 803.04(2)(a), Stats. Ultimate control over these decisions has been reserved for ALAS and therefore the policy satisfies the conditions of the statute.

We question the reality of ALAS' contention that its interests are not adverse to those of the other parties involved. ALAS' potential costs are directly related to the likelihood that Decade's will prevail in its action. Having rejected ALAS' assertion that liability does not attach until Whyte & Hirschboeck has experienced actual loss, we likewise reject ALAS' attempt to distinguish between exposure arising from a "loss actually sus-

679

tained by an insured rather than from a mere judgment against the insured or the liability that forms the 'outcome' of an action." Accordingly, we can not characterize ALAS' interests as anything but adverse to those of Decade's.

Accordingly, we hold that direct actions may be maintained against providers of insurance policies covering negligence by the insured regardless of whether the policy is one for indemnity or liability insurance. We base this determination on the history and public policy underlying Wisconsin's substantive direct action statute, sec. 632.24, Stats. We also conclude that in the case before us, ALAS satisfies the requirements of sec. 803.04(2)(a) and it may be joined as a proper defendant at trial.

*By the Court.*—Decision of the court of appeals is affirmed.

Justices DONALD W. STEINMETZ and JON P. WILCOX, took no part.