Taylor and others vs. Hill.

TAYLOR and others, Respondents, vs. HILL, imp., Appellant.

*September 6 — October 17, 1893.*

*Life insurance: Legality of contract, when immaterial after payment: Construction: Guardian's accounting: Laches.*

1. A married woman having procured insurance upon the life of her husband "for the sole use of" herself and his children, and the company, after his death, having voluntarily paid the amount to her and the guardian of the children, the question whether the company, under its charter and the law as it then existed, had the power to issue to a married woman a policy other than one payable to herself alone in case she survived her husband, is immaterial in a proceeding on behalf of the children to compel the guardian to account for the money so received by him.

| 86 | 99 |
| 87 | 669 |
| 88 | 99 |
| 89 | 40 |
| 86 | 99 |
| 110 | 4 39 |
| f110 | 4 40 |
| 86 | 99 |
| 57 LRA | 740n |
| 86 | 99 |
| 116 | 5173 |
| j116 | 5190 |
| 116 | 5327 |
| 61 LRA | 927 |
| 61 LRA | 932 |

Taylor and others vs. Hill.

2. The policy in such case having in terms provided that the insurance should be paid to the widow *and children*, and having received a practical construction accordingly by all parties, the court will not consider, in the proceeding against the guardian, whether, construing together the policy and the charter of the company, the insurance was not payable to the widow alone.

3. There having been no designation in the policy of any inequality in the shares which the widow and children should receive, they were all entitled to share equally.

4. Although the guardian had in good faith turned over the whole of the insurance money to the widow, he was bound to account to his wards for their shares thereof; and he was not entitled to be credited with their support furnished gratuitously by the widow, their mother, with no intention of charging therefor.

5. Neither the statute of limitations nor any bar in analogy thereto — such as laches — would apply to the claim of the wards against the guardian, unless the full period of limitation had elapsed after the guardian's denial or repudiation of the trust.

APPEAL from the Circuit Court for *Dane* County.

Guardian's accounting. Plaintiffs and respondents are the children of George Paine, deceased, who died testate in July, 1870, leaving surviving his widow, Maria P. Paine (now Maria P. Clark), and his children, the plaintiffs, then aged fourteen, nine, and six years, respectively. By his will said deceased gave all his property to his wife, and said will was probated, and his wife appointed and duly qualified as executrix thereof. In February, 1860, Maria P. Paine effected a policy of insurance on the life of her husband in the Mutual Life Insurance Company of Wisconsin (afterwards the Northwestern Mutual) for $3,000. The premiums were paid by her husband, and the same was in force at the time of Paine's death. Said policy provided that in consideration of the annual premium the said company assured the life of George Paine for "the sole use of Maria P. Paine and children of George Paine." Said policy also stipulates as follows: "And the said company do hereby promise and agree to and with the said assured, their executors, administrators, and assigns, well and truly

to pay or cause to be paid the said sum assured to the said assured, their executors, administrators, and assigns, in ninety days after notice, proof of death," etc., of George Paine.

August 5, 1870, the defendant *Hill*, having given the required bond, was appointed guardian of the plaintiffs upon the petition of Maria P. Paine, their mother, which petition represented that said minors had each an estate of about $1,000. The plaintiff *Ida*, being over fourteen years of age, joined in the petition. The plaintiffs had no other estate except their shares (if any) in the proceeds of this insurance policy. The sum due on the policy, after deducting unpaid premium notes, was $2,734.19, which sum was on the 2d of September, 1870, paid by a check payable to " Maria P. Paine and *James L. Hill*, guardian of *Ida Jane, George,* and *Frank M. Paine.*" The check came into *Hill's* hands, and was indorsed by Maria P. Paine and by *Hill* as guardian, and a receipt was given, signed in a like manner. The entire amount was, with *Hill's* knowledge, passed to the credit of Mrs. Maria P. Paine's private account in the Bank of Madison (of which bank Hill was an officer), and was all drawn out by Mrs. Paine within the ensuing year.

It appears that *Hill* assisted Mrs. Paine in settling her husband's estate, and attended to her business affairs with the Bank of Madison. *Hill* made no inventory, and took no further steps of any kind relating to his guardianship, and never paid to the minors, nor any person for them, any moneys. He testified that he supposed that his appointment was a mere formal matter, and that he supposed that the money belonged to Mrs. Paine, and the court found that such was his belief, and acquitted him of fraud or bad faith. The children were supported and educated by Mrs. Paine out of her own funds,— *Ida* for ten years, *George* for seven years, and *Frank* for ten years; but she neither made, nor intended to make, any charge therefor.

The Bank of Madison failed in September, 1873, and Mrs.
Paine was a considerable creditor thereof, and secured and
received dividends as such creditor.   She testified that she
did not know that the insurance money had all been placed
to her credit till after the failure, but supposed that it was
in the hands of *Hill* as guardian.   *Hill* testified that Mrs.
Paine knew that the whole sum was put to her credit in
the bank at the time it was done.   No specific finding was
made by the circuit court on this point, except that Mrs.
Paine subsequently learned of the fact.   No demand was
made on *Hill* to pay over or account for the moneys re-
ceived by him as guardian until July 1, 1891, when these
proceedings were begun.   During the pendency of the pro-
ceedings in the county court Maria P. Paine (now Maria
P. Clark) was brought in and made a party defendant.

Upon these facts the county court held that *Hill* should
account for three fourths of said insurance money and in-
terest, less fees and commissions; and upon appeal the cir-
cuit court held that the respondents were not chargeable
with laches, and that each of the respondents was the
owner of an undivided one-fourth of said insurance moneys,
and that *Hill* account for the same, less fees, commissions,
and counsel fees.   No interest was allowed except interest
from July 1, 1891, when the petition for accounting was
filed.   *Hill* appeals.

*F. J. Lamb* and *C. F. Lamb*, for the appellant.

For the respondents there was a brief by *Erdall &
Swansen*, and oral argument by *J. L. Erdall*.


WINSLOW, J.   The appellant's contentions are, in brief:
*First*, that Mrs. Paine was the sole owner of the moneys
realized from the insurance policy, because (a) under the
law as it existed in 1860, and the charter of the insurance
company, neither Mrs. Paine nor the company had power
to enter into a contract of insurance for the immediate

benefit of the respondents, and (b) even if such power ex-
isted, the true construction of the policy is that the loss is
payable to Mrs. Paine alone if she survives her husband,
and to the children only in case her death precedes his;
*second*, that in any event the children are entitled to a
moiety only of the fund; *third*, that Mrs. Paine, in whose
hands the whole fund went, should be compelled to charge
the plaintiffs with their support, and such sums should be
credited to the guardian in his accounting; and, *fourth*, that
plaintiffs have been guilty of laches which should prevent
their recovering anything.

I. An elaborate and able argument was made by appellant
upon the proposition that neither the company nor Mrs.
Paine (she having no separate estate) had power to enter
into a contract of insurance on the life of Mr. Paine, pay-
able directly to their children. It was argued that a mar-
ried woman without separate estate had not that power
under the laws existing in 1860, and that the charter dis-
tinctly negatives the power of the company to issue such
a policy. The company was chartered by ch. 129, P. & L.
Laws of 1857. Sec. 2 of that act provides that the cor-
poration "shall have no powers or privileges except such
as are expressly granted by this charter." Sec. 3 provides
that the corporation "shall have the power to insure the
lives of its respective members, and to make all and every
insurance appertaining to or connected with life risks, and
to grant and purchase annuities." Sec. 17 provides as fol-
lows: "It shall be lawful for any married woman by her-
self and in her name . . . to cause to be insured the
life of her husband for any definite period or for the term
of his natural life; and in case of her surviving her husband
the sum or net amount of the insurance becoming due and
payable by the terms of the insurance shall be payable to
her, to and for her own use. . . . In case of the death
of the wife before the decease of her husband, the amount

of the insurance may be made payable after death to her children for their use, and to their guardian if under age."

Under these sections it was argued that the only policy which the company was authorized to issue to a married woman was a policy payable to her alone in case she survived her husband, and to her children only in case of her death before that of her husband. The question is interesting, but we do not consider that it arises for decision in the present case. A very similar question was discussed in the case of *Hurd v. Doty, ante,* p. 1. In that case Mr. Justice CASSODAY said in the opinion: "Even assuming that such company might have resisted such payment, yet we are clearly of the opinion that in voluntarily making the payment the company violated no statute nor any principle of the common law or of good morals." This applies with equal force to the present case. The company issued a policy payable to the wife and children. They voluntarily paid the money due thereon to the widow and the guardian of the children. The transaction, so far as the company is concerned, was closed. The company could recover back none of the money paid. They waived the defense of *ultra vires,* if they had it. In a subsequent controversy touching the title to the money so voluntarily paid, the question of the power of the company to make the contract they did make cuts no figure. The contract is of importance now only in determining the question of the title to the moneys paid under it. Upon this question it was argued that the true construction of the policy is that the insurance is to be paid absolutely to Mrs. Paine in case she survives her husband, and to the children only in case of her death before that of her husband. This argument was based upon the claim that the charter defining the powers of the company must be construed as a part of the policy. This question also might be interesting, and perhaps doubtful, in an action against the company upon

the policy, but it seems to us. of no moment now. The company in no uncertain language agreed to pay the loss to Mrs. Paine and the children of Mr. Paine, "*their executors, administrators, and assigns.*" It would be doing violence to language to say that this means payment to Mrs. Paine in case of her survival, and to the children in case of her previous death. Furthermore, the parties in interest all participated in a practical construction and interpretation of the policy when it fell due,— the company, the widow, and the children through their guardian,— and they construed it to mean just what it says, namely, payment to the widow *and children.* The use of the word "sole" in the sentence "sole use of Maria P. Paine and children of George Paine" is certainly inaccurate in this view, but it cannot have the force of changing entirely the direct and specific promise of payment.

II. As to the shares which the widow and children are entitled to take under the policy we are clearly of the opinion that, in the absence of any designation in the policy of inequality in the shares, all the beneficiaries share equally. *Gould v. Emerson,* 99 Mass. 154; *Felix v. Ancient Order of United Workmen,* 31 Kan. 81; *Jackman v. Nelson,* 147 Mass. 300. The guardian should have retained in his hands, as the property of his wards, three fourths of the moneys received.

III. Can the guardian insist that he be credited with the support of the wards furnished by the mother gratuitously with no intention of charging therefor? We know of no principle of the law which would authorize this. She has never made any claim for such support, and now refuses to make any such claim. She was certainly at liberty to support her children gratuitously out of her own property if she chose, and if she chooses to make no claim therefor against them we do not see how any other person can make such claim.

IV. Has there been laches which will bar a recovery? This question must be answered in the negative. As between the trustee of an express trust and his *cestui que trust*, the statute of limitations does not apply, nor does any bar in analogy thereto, unless the full period of limitation has elapsed since the denial or repudiation of the trust. Laches is a bar in analogy to the statute of limitations. *Fawcett v. Fawcett*, 85 Wis. 332.

*By the Court.*— Judgment affirmed.