INTER-INSURANCE EXCHANGE OF CHICAGO MOTOR CLUB,
Respondent, v. WESTCHESTER FIRE INSURANCE COM-
PANY, Appellant.

*September 4—September 29, 1964.*

102

For the appellant there was a brief by *Rieser, Stafford, Rosenbaum & Rieser* of Madison, and oral argument by *Willard S. Stafford*.

For the respondent there was a brief by *W. L. Jackman*, attorney, and *Hart, Kraege, Jackman & Wightman* of counsel, all of Madison, and oral argument by *W. L. Jackman*.

HEFFERNAN, J. The ultimate question to be determined is the intent of Mannino and Westchester at the time they entered into their contract of insurance as evinced by the language of their agreement. This general rule was stated by the court in *Home Mut. Ins. Co. v. Insurance Co. of North America* (1963), 20 Wis. (2d) 48, 51, 52, 121 N. W. (2d) 275:

"The established rule, of course, is that in interpreting and construing an insurance contract (in fact, all contracts), the objective should be to ascertain the true intention of the parties. [Citations omitted.] A subordinate ruling is that in ascertaining the intention of the parties, a practical construction is most persuasive."

It should also be stated that it is fundamental that no contract of insurance should be rewritten by construction to bind an insurer to a risk which it did not contemplate and for which it was not paid, unless the terms, which after all are under the control of the insurer, are ambiguous or obscure. It is of course the rule that in the event of ambiguity or obscurity, the language is to be construed against the insurance company and in favor of the insured. *Lontkowski v. Ignarski* (1959), 6 Wis. (2d) 561, 95 N. W. (2d) 230.

If there were ambiguity the language of the entire contract should have to be construed most strongly against the insurer. *Vaudreuil Lumber Co. v. Aetna Casualty & Surety Co.* (1930), 201 Wis. 518, 520, 230 N. W. 704.

Respondent has correctly contended that where the provisions of a rider or endorsement are irreconcilable, the rider must control. However, the policy and the endorsements must be read together and it is only where an irreconcilable conflict exists that resort should be had to the rule that the endorsement should abrogate or nullify the policy provisions.

States Appleman in his treatise, 13 Insurance Law and Practice (1943), pp. 290, 294, 297, secs. 7537–7539:

"In construing an endorsement to an insurance policy, the endorsement and policy must be read together, and the policy remains in full force and effect except as altered by the words of the endorsement. Where the endorsement expressly provides that it is subject to all terms, limitations, and conditions of the policy, it does not abrogate or nullify any provision of the policy unless it is so stated in the endorsement.

". . .

"Endorsements or riders on a policy become a part of the policy, and must be construed with it. Such provisions in the body of the policy are not to be abrogated, waived, limited, or modified by the provisions of an endorsement or rider unless expressly stated therein that such provisions are substituted for those in the body of the policy, or unless the provisions in the policy proper and in the rider or endorsement are conflicting. But where the provisions are inconsistent, those of the rider or endorsement must prevail. And where several such documents appear, the last in point of time is controlling.

". . .

"But where the provisions of the rider and those of the policy are irreconcilable, the rider must control, and the terms of the rider supersede inconsistent provisions of the policy."

A construction of an insurance policy which entirely neutralizes one provision should not be adopted if the contract is susceptible of another construction which gives effect to all of its provisions and is consistent with the general intent. *Wyatt v. Wyatt* (1953), 239 Minn. 434, 58 N. W. (2d) 873. Applying these rules to the instant case, we are satisfied that the endorsement did not abrogate the exclusion clause in Westchester's policy and that the order overruling the demurrer must be reversed.

The automobile described in the Westchester policy was Mannino's half-ton, pickup truck. The following are the pertinent provisions of this policy:

### [Body of Policy]

"I Coverage A—Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile.

"IV Automobile Defined, Trailers, Private Passenger Automobile, Two or More Automobiles, Including Automatic Insurance.

"(a) Automobile. Except with respect to division 2 of coverage C and except where stated to the contrary, the word 'automobile' means:

"(2) Trailer—under coverages A, B and division 1 of coverage C, a trailer not described in this policy, if designed for use with a private passenger automobile, if not being used for business purposes with another type automobile, and under division 1 of coverage C, if not a home, office, store, display or passenger trailer;

### [Exclusions]

"This policy does not apply:

"(c) under coverages A and B, while the automobile is used for the towing of any trailer owned or hired by the insured and not covered by like insurance in the company;

or while any trailer covered by this policy is used with any automobile owned or hired by the insured and not covered by like insurance in the company; . . .

[Endorsement]

"It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability, for Property Damage and for Automobile Medical Payments with respect to the automobile described above or designated in the policy as subject to this endorsement applies, subject to the following provisions:

"1. The insurance also applies to a trailer not described in the policy, if designed for use with a private passenger automobile, and if not being used for business purposes with any automobile other than the automobile herein designated, or a private passenger automobile."

It appears, therefore, that the body of the policy under "Coverage A" obligates the Insurance Company in respect to the operation of the named automobile, the half-ton Chevrolet pickup truck. Under IV "automobile" is defined to include a trailer (designed for use with a passenger automobile) unless it is being used for business purposes with a nonpassenger or commercial-type vehicle. Since the phrase in IV (2) "another type automobile" follows the phrase "private passenger automobile," it is obvious that the phrase "another type automobile" refers to a nonpassenger or commercial-type vehicle. Implicit in this provision of the policy is the proviso that there shall be coverage for all use, business or nonbusiness, with a passenger car. Nonbusiness use with the pickup truck is also covered. Only a business use with "another type automobile" is denied coverage.

The exclusion section provides that there will be no coverage unless auto and trailer are insured with the same company. It is undisputed that the Lincoln and the trailer were both insured with the Motor Club. It is the contention of Motor Club that the trailer was additionally insured with

Westchester since by definition it was declared to be a vehicle entitled to coverage under IV (2) of Westchester's policy. It is agreed by both parties that the trailer would be insured by Westchester as well as Motor Club if it were not for the exclusion clause. It is the contention of Motor Club, however, that the exclusion in Westchester's policy is nullified by the endorsement.

The endorsement provides coverage not granted by the general coverage clause. The general coverage clause insured business and nonbusiness use if the trailer were hauled by a passenger automobile or if it were hauled by a nonpassenger or commercial-type vehicle for a nonbusiness use. Coverage was not afforded under IV (2) when the trailer was hauled by Mannino's pickup truck when that vehicle was being used for business. The endorsement gave coverage under those conditions and also reiterated the coverage provisions of IV (2) applicable while being hauled by a private-passenger automobile. It was the position of the learned trial judge that this latter provision was an extension of coverage. However, a review of the general coverage clause indicates that the coverage in regard to the passenger automobile use is mere surplusage. It gave no additional coverage. The endorsement only extended coverage to a risk that was not previously embraced by the policy in respect to the business use with the described Chevrolet pickup truck.

This endorsement by its first sentence is clearly made subject to the conditions in the body of the policy. The beginning of that sentence reads, "It is agreed that such insurance as is afforded by the policy . . . applies." This phrase evinces the intent that the endorsement be read in conjunction with the principal coverage clause of the policy. There is inconsistency only to the extent that the endorsement adds to the principal coverage clause. There is nowhere any evidence that this additional coverage was not to be

subject to the exclusion as was the principal clause. The endorsement expressly states that it is subject to "such insurance as is afforded by the policy." It is clear that the endorsement on its face indicates the intent that its provisions should be treated as Appleman, *supra,* page 294, suggests, "Endorsements or riders on a policy become a part of the policy, and must be construed with it."

We cannot escape the conclusion that the phrase in the endorsement "such insurance as is afforded by the policy" refers to the entire body of the policy and when the endorsement *in toto* is read in conjunction with the policy, the exclusion is preserved and included in the endorsement. Under this construction all portions of the policy and of the endorsement are given effect. We therefore reverse the order of the circuit court.

*By the Court.*—Order of the circuit court overruling demurrer reversed, with directions to enter an order sustaining the demurrer to the complaint herein.

WILKIE, J. (*dissenting*). I believe that the endorsement served to nullify the operation of Exclusion (c). To me there is an ambiguity between the provisions of the policy and those of the endorsement that must be resolved by resort to rules of construction applied to the endorsement and its effect on the policy. The endorsement is inconsistent with the policy and since the endorsement was agreed to at a later time I would conclude that its provisions should prevail.[1]

If Westchester intended that the exclusion requiring the trailer to be used only with vehicles insured by Westchester was not to be abrogated by the endorsement, it could easily have made it clear by providing in the endorsement that it did nothing more than the appellant contends.

---

[1] *Britten v. Eau Claire* (1952), 260 Wis. 382, 51 N. W. (2d) 30.

I would apply, as did the trial court, the well-established rule that where a provision in an insurance policy is ambiguous, it should be construed in favor of the insured.[2]

I would affirm.

I am authorized to state that Mr. Justice FAIRCHILD joins in this opinion.

[2] *Kaiser v. Prudential Ins. Co.* (1956), 272 Wis. 527, 76 N. W. (2d) 311; *Employers Mut. Liability Ins. Co. of Wisconsin v. Underwriters* (D. C. Wis. 1948), 80 Fed. Supp. 353, affirmed (1949), 177 Fed. (2d) 249; *Rood v. Merchants Ins. Co.* (1942), 240 Wis. 329, 3 N. W. (2d) 353, 3 N. W. (2d) 680; *Patterson v. Natural Premium Mut. Life Ins. Co.* (1898), 100 Wis. 118, 75 N. W. 980; *Merritt v. Great Northern Life Ins. Co.* (1940), 236 Wis. 1, 294 N. W. 26; *Kopp v. Home Mut. Ins. Co.* (1959), 6 Wis. (2d) 53, 94 N. W. (2d) 224; *Schluckebier v. Arlington Mut. Fire Ins. Co.* (1959), 8 Wis. (2d) 480, 99 N. W. (2d) 705.