D'ANGELO, Plaintiff: EMPLOYERS MUTUAL LIABILITY IN-
SURANCE COMPANY, Intervenor and Appellant, v.
CORNELL PAPERBOARD PRODUCTS COMPANY, Defend-
ant and Appellant: INDEMNITY INSURANCE COMPANY
OF NORTH AMERICA, Impleaded Defendant and Re-
spondent.

*No. 315.   Submitted under sec. (Rule) 251.54 May 3, 1973.—Decided
June 5, 1973.*
(Also reported in 207 N. W. 2d 846.)

48

For the intervening plaintiff-appellant the cause was submitted on the briefs of *Gibbs, Roper & Fifield* of Milwaukee.

For the respondent the cause was submitted on the brief of *Kivett & Kasdorf*, attorneys, and *Clifford C. Kasdorf* and *Russell M. Ware* of counsel, all of Milwaukee.

HALLOWS, C. J.   The only issue presented is whether Indemnity's comprehensive automobile liability policy ex-

tended insurance coverage when a forklift was involved. Employers contends the court has already intimated that the forklift in this accident was an automobile within the definition of Indemnity's policy; in the second *D'Angelo Case,* this court only considered whether a forklift was a motor vehicle for the purpose of the direct-action statute as it was then written.[3] Whatever construction we gave the direct-action statute does not decide whether an insurance policy covers a specific vehicle.

In interpreting and construing an insurance contract, ". . . the objective should be to ascertain the true intention of the parties." *Home Mut. Ins. Co. v. Insurance Co. of North America* (1963), 20 Wis. 2d 48, 51, 121 N. W. 2d 275; *Inter-Insurance Exchange v. Westchester Fire Ins. Co.* (1964), 25 Wis. 2d 100, 104, 130 N. W. 2d 185. Ambiguities in an insurance contract are to be resolved against the insurer who drafted it and in favor of the insured. *Kopp v. Home Mut. Ins. Co.* (1959), 6 Wis. 2d 53, 94 N. W. 2d 224; *Luckett v. Cowser* (1968), 39 Wis. 2d 224, 159 N. W. 2d 94.

However, where no such ambiguity exists, the rule of strict construction against insurers is not applicable. *Leatherman v. American Family Mut. Ins. Co.* (1971), 52 Wis. 2d 644, 190 N. W. 2d 904; *Westerman v. Richardson* (1969), 43 Wis. 2d 587, 168 N. W. 2d 851. To do otherwise would be ". . . to bind an insurer to a risk which it did not contemplate and for which it was not paid . . . ." *Inter-Insurance Exchange v. Westchester, supra,* at p. 104.

These general rules apply between insurance companies where one insurance company's rights depend upon subrogation of the insured. In this case we do not

---

[3] Sec. 260.11(1), Stats., was amended by ch. 198, Laws of 1969, to apply to liability insurers generally. For a discussion of the history of this section, *see Shipman v. Kenosha Unified School District No. 1* (1973), 57 Wis. 2d 697, 205 N. W. 2d 399.

think it makes any difference whether a strict construction or a regular construction is given Indemnity's policy. We find no ambiguity calling for strict construction and we cannot apply that rule of interpretation to create one.

In ascertaining the intention of Cornell and Indemnity, the contract should be construed whenever possible so that each sentence, phrase or word used will have some meaning, and none of the language discarded as superfluous or meaningless. *Rabinovitz v. Travelers Ins. Co.* (1960), 11 Wis. 2d 545, 105 N. W. 2d 807; *Lontkowski v. Ignarski* (1959), 6 Wis. 2d 561, 95 N. W. 2d 230; *Inter-Insurance Exchange v. Westchester Fire Ins. Co., supra.*

In construing a contract, the particular construction given to it by the parties thereto is of some importance, that is, the conduct of a contracting party while acting under the contract—can be on some facts a "most persuasive" element in construing an insurance contract. *Taylor v. Hill* (1893), 86 Wis. 99, 56 N. W. 738; *Home Mut. Ins. Co. v. Insurance Co. of North America, supra; Inter-Insurance Exchange v. Westchester Fire Ins. Co., supra.* Here, Cornell, the insured, immediately notified its public liability carrier Employers of the forklift accident. However, Cornell did not notify its automobile liability carrier for over a year and a half; indeed it is stipulated that Cornell felt its public liability insurance provided the applicable coverage. As late as July 29, 1959, Cornell's assistant secretary-treasurer informed the automobile liability carrier that Cornell assumed its automobile policy with it was not relevant to this accident.

We do not need to decide whether a forklift is or is not an automobile within the policy definition. On appeal, Employers contends the trial court, in making its decision, used the word "coverages" in its conclusory sense, *i.e.*, whether or not a person or vehicle is "covered"

by the policy. Coverage or coverages as that word is generally used refers to the sum of risks which an insurance policy covers. *See: Smith v. National Indemnity Co.* (1973), 57 Wis. 2d 706, 205 N. W. 2d 365; *Freimuth v. Glens Falls Ins. Co.* (1957), 50 Wash. 2d 621, 314 Pac. 2d 468; *Seabaugh v. Sisk* (Mo. App. 1967), 413 S. W. 2d 602. Employers argues that it is because of the policy's reference to "any automobile" in the insurance clause and therefore any accident caused by the use of the forklift comes within the coverage of the policy. Assuming a forklift is an automobile, we do not read the policy or find the intention of the parties to cover them in the automobile policy, nor can we accept Employers' argument that the insuring clause overrides other parts of the contract. The insuring clause is broad and must be read with all the terms of the policy. Insurance policies are "created" by taking standard forms and adding standard endorsements in the hopes that the basic form and all the endorsements attached express the intent of the parties. The exclusions and additions in a policy are as much a part of the policy as the insuring clause. Declarations of the risks or hazards covered also qualify the broad language of an insuring clause. In this case, a declaration added to the policy listed 22 automobiles. Cornell had 15 forklifts, but they were not listed.

It is argued by Employers that the scheduling of the automobiles was merely for the convenience of rate-making and not a limitation of the hazards assumed. We think this is a misconstruction of the purpose of an insurance policy. Premiums are based upon the hazards assumed. Where the premium cannot be determined at flat rate, it is under some policies determined as an advance premium with retrospective adjustment depending upon the actual risk the automobiles created. It is impossible for us to see how the retrospective-rating feature includes other risks than those specified. We can see substitutions and perhaps additions of automobiles on the

schedules if the endorsement so provides, but we cannot adopt a rule of construction that retrospective determination of premiums enlarges the hazards assumed.

Cases are cited by Employers from other states seemingly holding that the insuring agreement part of the insurance contract is controlling,[4] but such a rule has not been adopted in this state and other states are to the contrary.

We must conclude that the construction of the automobile policy contended for by Employers is neither logical nor desirable and does not comport with the conduct of the parties under the agreement. The trial court committed no error in holding Indemnity's policy did not in fact cover the forklifts.

*By the Court.*—Judgment affirmed.

---

[4] *Iowa National Mut. Ins. Co. v. Fidelity & Casualty Co.* (1964), 256 Iowa 723, 128 N. W. 2d 891; *Indiana Lumberman's Mut. Ins. Co. v. Russell* (1962), 243 La. 189, 142 So. 2d 391; *Murry v. Bankers Fire & Marine Ins. Co.* (La. App. 1967), 198 So. 2d 532.