ERICKSON, Respondent, v. MID-CENTURY INSURANCE
COMPANY, Appellant.

*No. 332. Argued May 6, 1974.—Decided June 4, 1974.*
(Also reported in 218 N. W. 2d 497.)

748

For the appellant there were briefs by *Gwin & Fetzner*, attorneys, and *Helen H. Madsen* and *John W. Fetzner* of

counsel, all of Hudson, and oral argument by *John W. Fetzner.*

For the respondent there was a brief by *C. M. Bye* and *Gaylord & Bye,* all of River Falls, and oral argument by *C. M. Bye.*

ROBERT W. HANSEN, J. The plaintiff, John R. Erickson, was involved in an automobile accident on February 22, 1970, and the sole issue here is whether the insurance policy issued by defendant, Mid-Century Insurance Company, was legally in existence and provided coverage on that date.

One way, and we think the best way, to deal with this sole issue is to take up the holdings of the trial court as they follow, chronologically, the various actions of the parties involved.

The trial court held that the December 8, 1969, letter from Farmers Insurance Group to Erickson constituted merely an offer of insurance by Mid-Century to Erickson which he did not accept. This holding is not contested by Mid-Century. The holding is correct because Erickson took no action whatsoever in response to the letter. Whether the letter related to a contract renewal or a new policy of insurance, all of the essentials of contract must have been present to effect coverage, including acceptance by Erickson.[1]

The trial court apparently viewed Erickson's request, made on January 2, 1970, as an offer to Mid-Century to

[1] *See: Stueck v. Le Duc* (1973), 57 Wis. 2d 735, 740, 205 N. W. 2d 139, this court stating: "Since the renewal of a policy is the effecting of insurance for a term not already covered, it follows that all elements necessary for the formation of a contract of insurance must likewise be satisfied in order to have a binding contract to renew.

"The notices sent by respondent to Wisconsin Asphalt constitute offers to renew that contract and do not effect a contract unless accepted by the insured. . . ." *See also: Weed v. Lepianka* (1966), 30 Wis. 2d 198, 205, 140 N. W. 2d 305.

insure his 1965 Chevrolet automobile with both liability and collision coverage. This offer was not accepted by Mid-Century when it sent, on January 14, 1970, a policy and first declaration sheet, giving December 19, 1969, as the effective date. This policy did not cover the 1965 Chevrolet, as was requested, and did not provide collision coverage, as was also requested by Erickson. The delivery of such policy and declaration sheet which did not accord with the application for insurance was no more than ". . . a counteroffer which must be accepted by the applicant in order to constitute a binding contract." [2] In the case before us, it was not so accepted.

The trial court held or apparently viewed the January 21st second declaration sheet as an acceptance by Mid-Century of Erickson's offer of January 2, 1970, to purchase liability and collision insurance on his 1965 Chevrolet. With the first declaration sheet of January 14, 1970, held to be a rejected counteroffer by the company, we would hold the second declaration sheet to be a second counteroffer by Mid-Century to provide liability and collision insurance on the 1965 Chevrolet. Such second counteroffer was accepted by Erickson when he made the $44 premium payment on January 25, 1970.[3] Under either the trial court view or our holding, the January 21st second declaration sheet constitutes and embodies the agreement of the parties as to when the insurance provided was to become effective.

The trial court held that ". . . The policy on the car involved in the accident was issued for the period of January 1, 1970, to June 19, 1970, for a premium of $136.28. . . ." Whether the second declaration sheet

[2] 1 Couch 2d, *Insurance*, p. 507, sec. 12:2.

[3] *See:* 1 Couch 2d, *Insurance*, p. 513, sec. 12:8, stating: "The receipt and retention by the applicant of a policy tendered or sent to him by the insurer, without notice of objection to the policy, is binding as an 'acceptance,' especially where accompanied by payment of the initial premium subsequent to the delivery of the policy . . . ."

constituted, as the trial court viewed it, an acceptance of the offer made by Erickson, and, as we hold it to be, an offer to provide insurance which Erickson accepted when he paid the $44 premium on January 25, 1970, the question of when coverage began is to be answered by what was stated in the second declaration sheet. Prominently displayed on the second declaration sheet, in a box labeled "Effective Date," was the date January 1, 1970, as the effective date of the insurance being offered. The appellant company would have us look elsewhere in the second declaration sheet to support its contention that "Effective Date: 01–01–70" should be construed to refer, not to the effective date of the policy, but the date on which a change in a continuing coverage was to be effective, the change being the car insured and the addition of collision coverage. This would be going beyond the clear and usual meaning of "Effective Date" as referring to the effective date of the policy, not to resolve an ambiguity but to create one. We affirm the finding of fact of the trial court that the second declaration sheet established January 1, 1970, as the effective date of coverage, collision and liability, of Erickson's 1965 Chevrolet.

The trial court held that if the policy between the parties had January 1, 1970, as its effective date, ". . . the defendant cannot be relieved of liability by notice of cancellation and failure of the plaintiff to act within the period described by said cancellation notice." We agree that events occurring subsequent to the payment of the $44 by Erickson on January 25, 1970, do not change the outcome of the case. Respondent concedes that Mid-Century's procedural handling of the cancellation was correct. But the precise question is, with the effective date of the policy being determined to be January 1, 1970, what period of coverage was assured Erickson by reason of the $44 payment he made on January 25, 1970?

The trial court held that ". . . the $44 payment extended defendant's liability through February 22, 1970."

As the trial court viewed it, under the policy, if coverage had commenced on December 19, 1969, the $44 worth of protection purchased by Erickson would, on a pro rata basis, have expired prior to February 22, 1970, the date of the accident. Since the effective date of the policy as to coverage was January 1, 1970, the $44 worth of protection would not, on a pro rata basis, have expired or lapsed prior to February 22, 1970. Given this contract of insurance, effective January 1, 1970, we find reasonable the trial court's construction of it, as entitling the policyholder to the period of protection paid for by the $44 premium payment.

The trial court held that ". . . it is clear, giving the plaintiff the benefit of construction in favor of the assured, *Ryan v. Friede*, 18 Wis. 2d 138 [118 N. W. 2d 208 (1962)], that the $44 payment extended defendant's liability through February 22, 1970." It is certainly true that this state follows a policy of strict construction of insurance policies, resolving ambiguities against the insurer.[4] In the event of ambiguity or obscurity, the language is to be construed against the insurance company and in favor of the insured.[5] However, we do not see that general rule as needed here. In the words of the case cited by the trial court, the trial court's ". . . construction and interpretation of the policy provisions does not require any finding of ambiguity and is entirely reasonable, gives the words their ordinary meaning, carries out

[4] *Leatherman v. American Family Mut. Ins. Co.* (1971), 52 Wis. 2d 644, 649, 190 N. W. 2d 904, citing *Kopp v. Home Mut. Ins. Co.* (1959), 6 Wis. 2d 53, 94 N. W. 2d 224.

[5] *Inter-Insurance Exchange v. Westchester Fire Ins. Co.* (1964), 25 Wis. 2d 100, 104, 130 N. W. 2d 185, citing *Lontkowski v. Ignarski* (1959), 6 Wis. 2d 561, 95 N. W. 2d 230. *See also: Merritt v. Great Northern Life Ins. Co.* (1940), 236 Wis. 1, 5, 294 N. W. 26, stating: ". . . in case of reasonable uncertainty, doubt, or ambiguity, courts should construe policies of insurance which are not standard policies, *i.e.*, prescribed by statute, 'strictly,' or 'most strongly' against the insurer. . . ."

the reasonable intentions of the parties, and gives effect to all parts of the insurance agreement." [6]

*By the Court.*—Judgment affirmed.

