United States Court of Appeals,

Fifth Circuit.

No. 93-7100.

UNITED STATES FIRE INSURANCE CO., Plaintiff-Counter Defendant-Appellant, Cross-Appellee,

v.

CONFEDERATE AIR FORCE, Defendant-Third Party Plaintiff-Counter Claimant-Appellee, Cross-Appellant,

v.

AVIATION OFFICE OF AMERICA, Third Party Defendant-Appellant, Cross-Appellee.

March 15, 1994.

Appeals from the United States District Court for the Southern District of Texas.

Before VAN GRAAFEILAND,[*] SMITH and WIENER, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

United States Fire Insurance Company ("U.S. Fire") and Aviation Office of America, Inc. ("AOA") appeal from a final judgment awarding Confederate Air Force ("CAF") $2,047,500, representing interest, attorney's fees and damages arising out of the alleged misrepresentation of coverage provided in a U.S. Fire aircraft insurance policy issued to CAF. Although the judgment was entered against AOA, U.S. Fire's aviation insurance manager, the parties and the court below treated U.S. Fire and AOA as "one entity," and the judgment so provided. CAF cross-appeals from that part of the judgment that "discounted" $1,000,000 from the original

---

[*]Circuit Judge of the Second Circuit, sitting by designation.

1

award of $3,047,500, because of U.S. Fire's payment of $1,000,000 to CAF pursuant to a settlement agreement, which provided for repayment of the $1,000,000 if that amount was found to be in excess of the policy limits. We vacate the judgment in its entirety and remand to the district court with instructions to enter judgment in favor of U.S. Fire and against CAF in the amount of $1,000,000 plus interest and attorney's fees as provided in the settlement agreement, together with the costs of this appeal.

CAF is a Texas corporation which maintains a "flying museum" of over 100 vintage aircraft used in displays and air shows. Prior to 1984, CAF insured its aircraft under a policy issued by American Continental Insurance Company through its managing agent Southern Aviation Insurance Group (the "SAIG policy"). The SAIG policy provided CAF with "Single Limit Bodily Injury and Property Damage" coverage of $1,000,000 per "occurrence." However, it contained a recovery sublimit of $100,000 per passenger for bodily injuries. Dissatisfied with the passenger sublimit restriction in the SAIG policy, CAF decided to replace it with a policy omitting that limitation.

In early 1984, John Allen, an agent who procured insurance for CAF, and Richard Post, an underwriter for AOA, discussed the possibility of acquiring a policy from U.S. Fire. Allen furnished Post with a copy of the SAIG policy and told him that CAF desired the same kind of coverage without the passenger sublimit. Post agreed to provide CAF with single combined limit coverage of $1,000,000 per aircraft with no sublimits under U.S. Fire's

2

"SuperPlain" aircraft policy.  Post notified Allen over the telephone that coverage of CAF's fleet under the U.S. Fire policy commenced on September 17, 1984.

On October 13, 1984, a PBY-6 Catalina aircraft owned by CAF crashed into Laguna Madre, killing seven passengers and severely injuring three others.  At the time of the crash, an AT-6 aircraft, also owned by CAF, was flying near the PBY-6.  A passenger aboard the AT-6 was photographing the PBY-6 in flight.  The AT-6 pilot requested the pilot of the PBY-6 to fly closer to the water so that the AT-6 could obtain better photographs.  However, the AT-6 did not perform any maneuver that caused the crash, which, absent any plane defect, was caused by error on the part of the PBY-6 pilot.

The U.S. Fire policy was delivered to Allen in November 1984. Allen read the policy and, with the exception of a policy endorsement unrelated to the instant case, believed it provided the coverage he had requested.  The policy stated in relevant part:

6. COVERAGES AND LIMITS OF LIABILITY:  The most we will pay under each coverage we provide is shown below for each aircraft....

LIABILITY TO OTHERS:

...

    D.   Single Limit

        Bodily Injury

        Property Damage

        Including Pass[engers]

        each occurrence    $1,000,000

In September 1985, representatives of the families of injured or deceased passengers received letters from CAF indicating that

the U.S. Fire policy provided total coverage of only $1,000,000. Neither Allen nor CAF raised the question whether the U.S. Fire policy might provide coverage in excess of $1,000,000 until a lawyer for one of the families pointed out in October 1985 that another covered aircraft, the AT-6, was present when the PBY-6 crashed. Although U.S. Fire disputed the existence of coverage in excess of $1,000,000, it agreed to settle the claims of the victims' families for a total payment of $2,000,000. However, in the settlement agreement U.S. Fire reserved the right to litigate with CAF the coverage dispute regarding the additional $1,000,000 payment.

In February 1986, U.S. Fire sued CAF in the United States District Court for the Southern District of Texas seeking a declaratory judgment that it was liable for no more than $1,000,000 as a result of the Laguna Madre crash and that CAF was obligated to repay it $1,000,000 plus interest and attorney's fees pursuant to the terms of the settlement agreement. U.S. Fire moved for summary judgment. In a memorandum and order dated August 5, 1987, the district court granted U.S. Fire's motion, holding that there had been only one "occurrence" and that "occurrence" involved only one aircraft, the PBY-6. The court ordered CAF to pay U.S. Fire $1,000,000 plus prejudgment interest and attorney's fees.

Before judgment was entered, however, the district court permitted CAF to amend its pleadings to assert a counterclaim against U.S. Fire and third-party claims against AOA, Allen and Allen's company, Falcon Insurance Agency, for misrepresentation of

4

insurance coverage in violation of the Texas Deceptive Trade Practices Act ("DTPA"), Tex.Bus. & Com.Code Ann. §§ 17.41 *et seq.,* and the Tex.Ins.Code Ann. art. 21.21, § 16. Although CAF subsequently withdrew its claims against Allen and Falcon Insurance Agency, the claim against U.S. Fire and AOA, which the parties treated as one entity, went to trial. At the close of CAF's evidence, U.S. Fire and AOA moved for a directed verdict. The district court deferred ruling on the motion, stating it would "just carry [the motion] along." In a special verdict, the jury found that Richard Post, an agent of AOA, knowingly had misrepresented the coverage provided CAF in the U.S. Fire policy and that this misrepresentation was the producing cause of damages to CAF.

The district court denied U.S. Fire and AOA's motion for judgment notwithstanding the verdict. The judgment thereafter entered held AOA liable for $3,047,500, representing CAF's actual and trebled damages, prejudgment interest and attorney's fees. This figure then was "discounted" in the judgment by the $1,000,000 that U.S. Fire had paid in excess of its policy limits.

THE POLICY LIMITS

In evaluating a district court's decision to grant summary judgment, we review the record under the same standards that guided the district court. *See Walker v. Sears, Roebuck & Co.,* 853 F.2d 355, 358 (5th Cir.1988). We review questions of law *de novo, see Moore v. Eli Lilly & Co.,* 990 F.2d 812, 815 (5th Cir.), *cert. denied,* --- U.S. ----, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993), and

we affirm the grant of summary judgment only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law, *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Ranger Ins. Co. ex rel. Bernstein v. Estate of Mijne,* 991 F.2d 240, 243 (5th Cir.1993). The district court correctly held that the above requirements were met in the instant case.

The U.S. Fire policy's definition of occurrence, so far as pertinent, is "a sudden event ... involving the aircraft ... neither expected nor intended by you, that causes bodily injury ... to others...." The district court interpreted the word "occurrence" as "the occurrence of the event or incident for which CAF was liable, namely the crash of the PBY-6 aircraft." The parties had stipulated that the AT-6 plane did not perform any maneuver which caused the crash. The request by the AT-6 pilot that the PBY-6 pilot fly somewhat lower so that a better picture could be taken was not a "sudden event involving the [AT-6]" within the policy coverage of that plane. In other words, it was not an "occurrence" involving the AT-6 within the plain meaning of the policy.

Under Texas law, an unambiguous insurance policy, like any other contract, will be enforced as written. *Upshaw v. Trinity Companies,* 842 S.W.2d 631 (Tex.1992); *Melton v. Ranger Ins. Co.,* 515 S.W.2d 371, 373 (Tex.Civ.App.—Fort Worth 1974, writ ref'd n.r.e.). Under the plain and unambiguous meaning of the U.S. Fire policy, the "occurrence" that caused the injuries and damages in

the instant case was the crash of the PBY-6 into the water. Insofar as the AT-6 was concerned, this was not an occurrence. *See Maurice Pincoffs Co. v. St. Paul Fire & Marine Ins. Co.,* 447 F.2d 204, 206 (5th Cir.1971). The district court did not err in granting U.S. Fire's motion for summary judgment.

### THE DECEPTIVE TRADE PRACTICES AWARD

At the outset, we hold that pursuant to this Court's liberal and equitable interpretation of Fed.R.Civ.P. 50(b), U.S. Fire preserved its right to challenge the sufficiency of CAF's evidence. *See Davis v. First Nat'l Bank,* 976 F.2d 944, 948-49 (5th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 2341, 124 L.Ed.2d 251 (1993); *Merwine v. Board of Trustees,* 754 F.2d 631, 634-35 (5th Cir.), *cert. denied,* 474 U.S. 823, 106 S.Ct. 76, 88 L.Ed.2d 62 (1985). We therefore have considered the merits of U.S. Fire's motion for judgment n.o.v. and conclude that it should have been granted.

Since the seminal case of *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc), we have followed its teachings in deciding when a case should be taken from the jury. We there said that "[i]f the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motion[ ] is proper." We added: "A mere scintilla of evidence is insufficient to present a question for the jury." *Id.* For later consistent holdings, *see Love v. King,* 784 F.2d 708, 710 (5th Cir.1986); *Mack v. Newton,* 737 F.2d 1343, 1351 (5th Cir.1984);

7

*Ford v. General Motors Corp.,* 656 F.2d 117, 119 (5th Cir.1981). Viewed in the light of these teachings, U.S. Fire's motion for judgment n.o.v. should have been granted.

In order to find misrepresentation in the instant case, the jury would have had to find either that U.S. Fire represented that CAF would receive a particular kind of policy that it did not receive or that it denied coverage against loss under specific circumstances that it previously had represented would be covered. *See Parkins v. Texas Farmers Ins. Co.,* 645 S.W.2d 775, 776-77 (Tex.1983); *Employers Casualty Co. v. Fambro,* 694 S.W.2d 449, 452 (Tex.App.—Eastland 1985, writ ref'd n.r.e.). As to the first issue, there is no question but that CAF received the policy it requested. It wanted a policy similar to the SAIG policy it already had, but without the $100,000 per passenger limitation on liability. That is what it received. Moreover, with regard to the definition of "occurrence" which is the pivotal issue in this case, the definitions in the two policies are substantially the same. That is what CAF's expert, Gary Beck, said and no witness disputed it. Neither does this Court.

> Q And, as we discussed earlier, the definition of occurrence is something you would normally find in an aviation insurance contract, right?
>
> A Yes.
>
> Q That is something that you would expect?
>
> A Yes.
>
> Q And there is one also in the AOA policy that is at Item No. M here and on this one it is No. 3 here?
>
> A Yes.

8

Q Right? Now we have the Southern Aviation one reproduced here and we have already had this identified. I would like for you to look again if you would, please, at the substance of the definition of occurrence in the Southern policy, the substance of the definition of occurrence in the AOA policy, and tell me whether they are substantively the same?

A I think they are substantively the same.

Gary Beck—Cross, TR 296.

CAF attempts to frame the issue of misrepresentation as if a statement that each of its planes had $1,000,000 in coverage was false. Such a statement, if made, was not false. Each plane did have $1,000,000 in coverage. Coverage, as that word generally is used in reference to insurance contracts, refers to the aggregate or sum of the risks covered by the policy. *See D'Angelo v. Cornell Paperboard Prods. Co.,* 59 Wis.2d 46, 207 N.W.2d 846, 849 (1973); *Webster's Third New International Dictionary* at 525. It does not identify the risks that are covered. To say, therefore, that plane AT-6 had $1,000,000 in coverage does not mean that a total of $1,000,000 would be paid to those who make a claim of any nature against the company. The money is available only for the risks insured against, in this case the happening of an occurrence, a "sudden event involving the [AT-6] neither expected nor intended by [CAF]."

During the discussions between Post and Allen that preceded the Laguna Madre crash, which is the only period during which any misrepresentation by Post could have affected CAF adversely, Post and Allen never discussed how the terms of the policy would apply to hypothetical circumstances involving CAF aircraft. Certainly,

9

no discussion ever was had concerning a hypothetical accident anything like the unusual one at issue herein. The district court erred as a matter of law in denying U.S. Fire's motion for judgment notwithstanding the verdict.

The judgment of the district court is VACATED. The matter is REMANDED to the district court with instructions to enter judgment in favor of U.S. Fire and against CAF in the amount of $1,000,000 plus interest and attorney's fees as provided in the settlement agreement, together with the costs of this appeal.