# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1967

_____

| | | |
|---|---|---|
| Gulf Underwriters Insurance Company, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Lowell P. Burris; Joyce P. Burris, | * | |
| | * | |
| Defendants - Appellants, | * | |

_____

Submitted: December 15, 2011
Filed: March 27, 2012

_____

Before LOKEN, BRIGHT, and SHEPHERD, Circuit Judges.

_____

LOKEN, Circuit Judge.

Lowell Burris was seriously injured in August 2001 when he fell from a ladder manufactured in Wisconsin by Versa Products, Inc. ("Versa"), and purchased from Menard, Inc. ("Menard"). In March 2003, when Burris's attorney allegedly wrote Versa asserting a product liability claim, Versa and an affiliate were named insureds and Menard was an additional insured under a "claims made" Commercial General Liability insurance policy issued in Wisconsin by Gulf Underwriters Insurance Company ("Gulf"). The policy included a $50,000 "Self-Insured Retention" endorsement (the "SIR").

In August 2007, Burris and his wife commenced a product liability action against Menard, Versa, and Versa's affiliate in Minnesota state court. After Menard removed the action to federal court, which has diversity jurisdiction, Gulf commenced this action seeking a judgment declaring "that the policy issued by Gulf to [the named insureds] does not afford coverage to them or Menard, Inc. for any claim made by [Burris] under the terms of the Gulf Policy." The district court granted Gulf's motion for a summary declaratory judgment on the ground that Versa's dissolution after expiration of the policy meant that the insured "cannot meet its obligations under the SIR," a material breach that terminates Gulf's obligations under the policy. Burris appeals. We review *de novo* the district court's interpretation of the insurance policy under governing Wisconsin law. See Rural Mut. Ins. Co. v. Welsh, 633 N.W.2d 633, 635-36 (Wis. App. 2001). We reverse and remand with directions to dismiss Gulf's declaratory judgment action with prejudice.

## I.

As this is a diversity action, we interpret Gulf's Commercial General Liability policy in accordance with Wisconsin law. The Wisconsin courts apply well-known principles of contract interpretation in resolving insurance coverage disputes. Words and phrases in insurance policies are subject to the rules of construction that apply to contracts generally. An unambiguous policy will be construed according to its plain meaning. But if the policy language is ambiguous, that is, susceptible to more than one reasonable construction, ambiguities will be construed in favor of the insured. See, e.g., Frost ex rel. Anderson v. Whitbeck, 654 N.W.2d 225, 229-30 (Wis. 2002).

Unlike Gulf's briefs and the district court's Opinion and Order, which quoted only excerpts, we begin by quoting the entire SIR endorsement because, in our view, that is all one needs to decide the issue raised on appeal:

This endorsement forms a part of the policy to which it is attached. Please read it carefully.

**SELF-INSURED RETENTION**
**(WITH AGGREGATE SELF-INSURED RETENTION)**
**DEFENSE COSTS CONTRIBUTING TO RETENTION LIMIT**

In consideration of the premium charged, it is hereby agreed that such coverage as is afforded by this policy shall be excess of a **$50,000** Self-Insured Retention each "occurrence." It is also agreed that all expenses and costs under the Supplementary Payments section stated in the Coverage Form (Section 1) shall contribute to the exhaustion of the **$50,000** Self-Insured Retention Limit and all such expenss and costs shall be entirely borne by the insured.

All the terms of this policy including, but not limited to, those with respect to notice of "claim" or "suit" and the Company's right to investigate, negotiate, defend and settle any "claim" apply irrespective of the application of the Self-Insured Retention.

The Company may, but is not obligated to, pay all or part of the Self-Insured Retention to effect settlement of any "claim," "suit" or expense. Upon notification of the action taken, the insured shall promptly reimburse the Company for such Self-Insured Retention amount paid by the Company. Failure of the insured to pay such Self-Insured Retention amount within ten (10) days after receipt of a written request for such payment shall subject the policy to cancellation in accordance with the terms and conditions relating to non-payment of premium.

This endorsement does not in any way relieve the insured of his responsibility to report any incident that might give rise to a "claim" as stated elsewhere in this policy.

The Self-Insured Retention obligation to this contract shall be considered to be an executory contract under all circumstances and payments on this obligation shall be paid by the insured. Failure to make the payment entitles the insurer to terminate the contractual obligation between the parties as a failure to the Self-Insured Retention endorsement is a material breach as to the entire contract. In the event of a bankruptcy filing, the contract is deemed executory as under 11 U.S.C. 365, and the payments of the Self-Insured Retention shall be made on a monthly basis and treated as an administrative expense under 11 U.S.C. 507(a)(1).

The Self-Insured Retention amount applies under Bodily Injury Liability, Property Damage Liability, Personal Injury Liability and Advertising Injury Liability Coverage combined to all damages because of "bodily injury," "property damage," "personal injury" and "advertising injury" as the result of any one "occurrence" or offense regardless of the number of persons or organizations who sustain damages because of that "occurrence" or offense.

***$250,000** Annual Aggregate. However, in the event of cancellation of this policy, the aggregate Self-Insured Retention is not subject to pro-rata or short rate reduction of the stated Annual Aggregate.

-3-

Gulf asserted, and the district court ruled, that the policy provides *no coverage* for the claim asserted by Burris solely because the SIR expressly provides that Versa's inability to comply with its SIR obligations "is a material breach as to the entire contract" that terminates Gulf's obligations under the policy. But that assertion is squarely contrary to another term of the SIR, which provides: "All the terms of this policy . . . apply irrespective of the application of the Self-Insured Retention." Beyond question, "the terms of this policy" include its coverage provisions. Thus, while the *amount* of coverage set forth in the policy declarations is affected by the amount of Self-Insured Retention, the *coverage* of third-party liability claims continues to be defined exclusively by the provisions of the policy's Commercial General Liability Coverage Form. In other words, as one would expect, the policy's drafters did not intend the self-insured endorsement to affect Gulf's obligations under the policy to third party claimants. Under Wisconsin law, "Where the endorsement expressly provides that it is subject to all terms, limitations, and conditions of the policy, it does not abrogate or nullify any provision of the policy unless it is so stated in the endorsement." Inter-Ins. Exch. of Chi. Motor Club v. Westchester Fire Ins. Co., 130 N.W.2d 185, 188 (Wis. 1964).

If confirmation of this interpretation is needed, we readily find it in the third paragraph of the SIR, which Gulf deceptively omitted from the SIR excerpts quoted in its briefs to the district court and to this court. That paragraph provides in part: "Failure of the insured to pay such Self-Insured Retention amount within ten (10) days after receipt of a written request for such payment shall subject the policy to cancellation in accordance with the terms and conditions relating to non-payment of premium." By contrast, the fifth paragraph, on which Gulf relies, provides: "The Self-Insured Retention obligation [is] an executory contract . . . and payments on this obligation shall be paid by the insured. Failure to make the payment entitles the insurer to terminate the contractual obligation between the parties as a failure to the Self-Insured Retention endorsement is a material breach as to the entire contract." (Emphases added.) Note this provision does not refer to cancellation of the policy nor

to the cancellation terms of the policy, all of which require ten or thirty days notice of cancellation. In other words, the "termination" referred to in the fifth paragraph is not a "cancellation" of the policy. And without cancellation of the policy, Gulf's contention that existing third party claimants are deprived of coverage is unsound. At a minimum, these inconsistent termination/cancellation provisions within the SIR itself create an ambiguity that must be resolved in favor of the insured. See Donhower v. Marquez, 674 N.W.2d 906, 913 (Wis. App. 2003).[1]

Citing only a general principle, Gulf asserted, and the district court recited, that the SIR is an "executory contract." We fail to see how that is even relevant to this coverage issue. But in any event, as Gulf and its attorneys must have known, *every court in the country* to consider a related issue has ruled "that insurance policies for which the policy periods have expired and the premium has been paid are not executory contracts, despite continuing obligations on the part of the insured." In re Vanderveer Estates Holding, LLC, 328 B.R. 18, 26 (Bankr. E.D.N.Y. 2005), and cases cited; accord In re Liquidation of Inter-Am. Ins. Co. of Ill., 768 N.E.2d 182, 191 (Ill. App. 2002). These cases confirm that the paragraph in the SIR calling it an "executory contract" was an attempt (likely futile) to improve Gulf's position in asserting claims for the pre-petition obligations of bankrupt insureds.

Another error in granting summary judgment was that Gulf submitted *no* admissible evidence supporting its assertion that Versa had breached the SIR -- no evidence Versa ever failed to make an SIR payment Gulf demanded; no evidence the $250,000 aggregate SIR limit had *not* been exceeded; no evidence Versa had no assets other than an inadmissible "friend-of-the-court" letter from a Milwaukee attorney claiming that he formerly represented Versa; no evidence Wisconsin law does not require dissolving corporations to preserve assets to satisfy the claims of creditors, cf.

_____

[1]We agree with the district court that, if an endorsement and a policy provision unambiguously and unavoidably conflict, the endorsement normally prevails. See Stubbe v. Guidant Mut. Ins. Co., 651 N.W.2d 318, 324 (Wis. App. 2002).

Minn. Stat. § 302A.7291; and no evidence that Versa and its principals will refuse to make any post-dissolution SIR payments that may be required to preserve the policy's coverage protections. On this record, summary judgment for Gulf was factually unwarranted.

## II.

The remaining question is what remains of this lawsuit. Gulf urges us to affirm on the basis of its other asserted coverage defenses. Instead, we will direct that its declaratory judgment action be dismissed with prejudice. "Relief under 28 U.S.C. § 2201, the Federal Declaratory Judgment Act, is discretionary, and an important factor in exercising that discretion is whether the declaratory judgment plaintiff has another, more appropriate remedy." Glover v. State Farm Fire & Cas. Co., 984 F.2d 259, 261 (8th Cir. 1993). On this issue, Gulf failed to disclose to the district court highly relevant Wisconsin statutes and judicial decisions from around the country.

Nearly a century ago, the Wisconsin Legislature enacted statutes authorizing direct actions against insurers. These statutes overruled decisions under prior law such as Glatz v. Kroeger Bros., 183 N.W. 683, 685 (Wis. 1921), where the court enforced a policy provision making an insurer liable only to the insured and only *after* the insured sustained a loss by paying a third party's judgment. As amended over the years, these statutes presently provide:

> **633.22 Required provisions of liability insurance policies.**
> Every liability insurance policy shall provide that the bankruptcy or insolvency of the insured shall not diminish any liability of the insurer to 3rd parties and that if execution against the insured is returned unsatisfied, an action may be maintained against the insurer to the extent that the liability is covered by the policy.

**632.24 Direct action against insurer.**

> Any bond or policy of insurance covering liability to others for negligence makes the insurer liable, up to the amounts stated in the bond or policy, to the persons entitled to recover against the insured . . . for injury to persons or property, irrespective of whether the liability is presently established or is contingent and to become fixed or certain by final judgment against the insured.

Wis. Stat. §§ 632.22, 632.24.[2] Under these direct action statutes, an injured party may join the liability insurer in a negligence action and recover for a covered loss even if the insured is insolvent or has been given an absolute release. See Decade's Monthly Fund v. Whyte & Hirschboeck, 495 N.W.2d 335, 338-39 (Wis. 1993); Rauch v. Amer. Fam. Ins. Co., 340 N.W.2d 478, 482-83 (Wis. 1983). Alternatively, the injured party may sue the insurer after recovering a judgment against the insured, if execution against the insured is returned unsatisfied for any reason. See Stone v. Inter-State Exch., 229 N.W. 26, 28 (Wis. 1930). These remedial statutes are "intended to facilitate recovery by injured parties." Kranzush v. Badger State Mut. Cas. Co., 307 N.W.2d 256, 266 (Wis. 1981). However, they do not expand the insurance contract by overruling the principle "that any defense under the policy that relieves the insurer from liability as against the assured also relieves it from liability as against injured persons." Hunt v. Dollar, 271 N.W. 405, 409 (Wis. 1937).

Wisconsin is not the only State to authorize direct actions against liability insurers or to mandate policy provisions that protect third party claimants in the event of the insured's insolvency. Our research revealed that *every* court to consider the issue in a State that has enacted such statutes has rejected Gulf's interpretation of its SIR as a matter either of public policy or of policy interpretation. In Albany Ins. Co. v. Bengal Marine, Inc., 857 F.2d 250, 255 (5th Cir. 1988), the Fifth Circuit concluded

---

[2]As mandated by § 633.22, paragraph 1 of Section IV of the policy provided: "Bankruptcy or insolvency of the insured . . . will not relieve us of our obligations under this Coverage Part."

that, "through the direct action statute, Louisiana has afforded claimants a direct cause of action against insurers precisely so that claimants can collect despite the insolvency of the insured." Other courts have held that statutes mandating insolvency policy provisions "prevent insurers from using the insured's bankrupt condition and resulting inability to make actual payment to satisfy a judgment or any portion thereof as grounds to avoid payment on a policy." Home Ins. Co. of Ill. v. Hooper, 691 N.E.2d 65, 69-70 (Ill. App. 1998); accord Gulf Underwriters Ins. Co. v. McClain Ind., Inc., No. 273768, 2009 WL 3021134 (Mich. App. Aug. 5, 2008), rev'w denied, 765 N.W.2d 16 (Mich. 2009); In re Vanderveer Estates, 328 B.R. at 23-24. And courts in States lacking direct action statutes or a statute mandating insolvency provisions have nonetheless held that a self-insured retention provision, even if unambiguous, violates the public policy "to prevent insurance companies from avoiding their obligations when an insolvent insured cannot make an expenditure towards discharging liability." Rosciti v. Ins. Co. of Pa., 659 F.3d 92, 98 (1st Cir. 2011); accord In re Texscan Corp., 976 F.2d 1269, 1273 (9th Cir. 1992). But cf. Pak-Mor Mfg. Co. v. Royal Surplus Lines Ins. Co., No. SA-05-CA-135-RF, 2005 WL 3487723, at *6 (W.D. Tex. 2005) (enforcing an unambiguous self-insured retention provision in the insured's bankruptcy proceeding because Texas has no such statutes).

Wisconsin's public policy as articulated by the Supreme Court of Wisconsin is consistent with these decisions. See Decade's Monthly, 495 N.W.2d at 339 (§ 632.22 was enacted "specifically to protect third parties in the event of an insured party's bankruptcy"); accord Engebretson v. Humana Ins. Co., No. 03-C-0553, 2006 WL 2871824, at *9 (E.D. Wis. Oct. 6, 2006). Thus, *if* the SIR unambiguously provided that non-compliance by the insured voided coverage of existing claims, we would conclude the SIR is void as a matter of public policy under Wisconsin law.

Gulf also failed to disclose to the district court or to this court that enactment of these direct action statutes initially prompted the Supreme Court of Wisconsin to prohibit declaratory judgment actions by insurers raising coverage issues prior to the

determination of the insured's liability to a third party.  New Amsterdam Cas. Co. v. Simpson, 300 N.W. 367, 369 (Wis. 1941); see Allstate Ins. Co. v. Charneski, 286 F.2d 238, 244 (7th Cir. 1960) (applying that rule in a diversity action governed by Wisconsin law).  Rather, the Court has instructed, "the proper procedure for an insurance company to follow when coverage is disputed is to request a bifurcated trial on the issues of coverage and liability."  Newhouse v. Citizens Sec. Mut. Ins. Co., 501 N.W.2d 1, 6 (Wis. 1993).  More recently, the Supreme Court of Wisconsin has declared that "the joinder or intervention of all concerned parties followed by bifurcation of the coverage and liability issues . . . is the preferred procedure to determine insurance coverage," but "coverage may be determined by . . . a separate declaratory judgment action" when, as here, the insurer was not joined in the underlying action.  Fire Ins. Exchange v. Basten, 549 N.W.2d 690, 696 (Wis. 1996).

Given the number of deceptive misstatements and non-disclosures in Gulf's presentation of the SIR issue to the district and to this court, and the existence of a "preferred procedure to determine insurance coverage" under Wisconsin law, we conclude that we should exercise our discretion to deny Gulf a declaratory judgment resolving other coverage issues that might have been suitable for declaratory relief in other circumstances.  Instead, the underlying action should proceed.  If Gulf does not intervene and if Burris recovers a liability judgment against Versa, and if execution is returned unsatisfied, Burris may sue Gulf directly under Wis. Stat. §§ 632.22 and 632.24.  Gulf may then assert its coverage defenses (other than Versa's non-compliance with the SIR).  If there is coverage, Gulf will be liable to Burris for any amount above $50,000 within the policy limits, but Gulf may not be ordered to "drop down" and pay Versa's self-insured portion of the judgment.  See Rosciti, 659 F.3d at 100; Albany, 857 F.2d at 256; Hooper, 691 N.E.2d at 70.  As Versa's self-insured obligation expressly included defense costs, there may be a question whether Burris would be obligated to reimburse Gulf for any defense costs Gulf incurs, as the court ordered in McClain Industries, 2008 WL 3021134, at *4.  We express no view on that question.

-9-

## III.

The judgment of the district court is reversed and the case is remanded with directions to dismiss Gulf's declaratory judgment action with prejudice. The district court is invited but not directed to issue an order to show cause why Gulf and/or its attorneys should not be ordered to reimburse Burris and his wife for their reasonable attorney's fees and costs in defending this declaratory judgment action. See Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991); 28 U.S.C. § 1927.

_____