**EDWARD E. GILLEN COMPANY,**
**Plaintiff–Appellee,**

**Fidelity and Deposit Company of Maryland, Intervening Plaintiff–Appellee,**

and

**BMO Harris Bank N.A., Intervening Plaintiff–Appellant,**

v.

**The INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, Defendant.**

**No. 15-1323**

United States Court of Appeals, Seventh Circuit.

Argued October 28, 2015

Decided June 16, 2016

Anthony K. Murdock, Attorney, Halloin & Murdock, S.C., Milwaukee, WI, for Plaintiff–Appellee.

Dustin Todd Woehl, Attorney, Kasdorf, Lewis & Swietlik, Milwaukee, WI, for Defendant.

John L. Kirtley, Attorney, Godfrey & Kahn S.C., Milwaukee, WI, for Intervenor–Appellant.

Cornelius F. Riordan, Megan M. Burke, Brandon G. Hummel, Attorneys, Riordan Mckee & Piper, Chicago, IL, for Intervenor–Appellee.

Before WOOD, Chief Judge, and EASTERBROOK and HAMILTON, Circuit Judges.

EASTERBROOK, Circuit Judge.

BMO Harris Bank (the Bank for short) holds a security interest in almost all assets of Edward E. Gillen Company, formerly in the foundation-construction business. This appeal presents a multi-party dispute about who gets what share of money paid into the court's registry by one of Gillen's insurers.

Gillen failed to perform on a subcontract with Meyne Company, which in arbitration received a net award of approximately $1.8 million. Liberty Mutual, Gillen's primary insurer, wrote Meyne a check for $1 million, the policy's limit. Meanwhile, Gillen asked a district court to set aside the arbitrator's award. Instead the court confirmed the award, and Gillen appealed to this court. In order to avoid execution of the judgment, Gillen had to post a supersedeas bond. Fed. R. Civ. P. 62(d). Fidelity and Deposit Company of Maryland (F & D) underwrote the bond. The appeal was settled and dismissed; as part of that agreement, F & D paid Meyne the remaining $800,000 and stepped into its shoes as Gillen's creditor.

Enter The Insurance Company of the State of Pennsylvania, which the parties call ICSOP and we call the Excess Insurer. The Excess Insurer, which had written a policy that took effect after Liberty Mutual's was exhausted, paid $1.2 million into the court's registry. It expresses indifference about who gets the money. The Bank wants the whole $1.2 million, arguing that its status as a secured creditor puts it ahead of F & D and Gillen, the other claimants. (Neither Meyne nor Liberty Mutual asserts any interest in the funds.) But the district court held that $800,000 goes to F & D because it is subrogated to

Meyne's rights, and Meyne could have collected from the Excess Insurer without impairing the Bank's security interest. 2015 U.S. Dist. LEXIS 7870 (E.D. Wis. Jan. 22, 2015). The judge concluded that the other $400,000 belongs to Gillen and goes to the Bank as its secured creditor.

The Bank contends in this court that it gets the whole $1.2 million for a simple reason: Meyne was Gillen's unsecured creditor, and F & D's subrogation to Meyne's position makes it an unsecured creditor too. If the $1.2 million were in Gillen's hands, then the superiority of the Bank's interest would be incontestable. The Bank insists that this must be true as well of funds used to retire Gillen's unsecured debt.

 The district court was not persuaded, and neither are we, because, as a matter of Wisconsin law (which governs this diversity litigation), insurance bypasses security interests. Consider what happened with Liberty Mutual's payment of the arbitration award's first $1 million. Liberty Mutual paid Meyne, and the Bank has never asserted an interest in that money. Whatever the rule might be elsewhere, Wisconsin is a direct-action jurisdiction in which the victim of an insured wrong can collect from the insurer. See Wis. Stat. § 632.24. In Wisconsin even the insolvency of the client and the presence of other creditors does not affect the victim's right to collect. Wis. Stat. § 632.22; *Decade's Monthly Income & Appreciation Fund v. Whyte & Hirschboeck, S.C.,* 173 Wis.2d 665, 676, 495 N.W.2d 335 (1993).

If Meyne could receive the first $1 million without regard to the Bank's lien, why not the remaining $800,000? That Meyne was paid by F & D rather than the Excess Insurer does not matter. F & D succeeded to Meyne's position and has the same rights it did.

 The Bank nonetheless insists that, because the Excess Insurer wrote a check to the federal court rather than to F & D, the money must be treated as Gillen's and subjected to the Bank's security interest. Whether that would be so if the Excess Insurer had written the check to Gillen is an interesting question of Wisconsin law, but not one we need resolve. The money did not enter Gillen's coffers. It was paid to the federal court, which concluded that F & D has a claim to $800,000 superior to any claim that Gillen can assert. And if F & D takes ahead of Gillen, it must come ahead of Gillen's creditors, such as the Bank. That would be equally true under federal bankruptcy law. See, e.g., *In re Edgeworth,* 993 F.2d 51 (5th Cir. 1993), which holds that under the Bankruptcy Code insurance proceeds pass to the beneficiaries free of other creditors' interests.

The Bank maintains that the Excess Insurer's payment wasn't really insurance. Gillen and the Excess Insurer disputed how much (if anything) it owed; they settled for $1.2 million. The Bank wants us to treat this as damages for the bad-faith denial of insurance coverage, rather than as insurance proceeds. Yet if an insurer wrongfully delays payment, and later makes everyone whole, why would the delay divert the money to a secured creditor rather than the person who should have received the cash in the first place? "Damages" measured by the value of insurance wrongfully delayed are just insurance proceeds by another name.

 That is not inevitable, but the Bank does not contend that Wisconsin sees a difference. This part of its argument does not rely on any statute or decision from Wisconsin, or any other state for that matter. The federal court's job in diversity litigation is to predict how the state's highest court would resolve a legal contention. We are confident that the Supreme Court of Wisconsin would give the beneficiary of an insurance policy (here F & D as

Meyne's subrogee for $800,000) the same rights, whether the payment is called "insurance" or "damages for failure to indemnify on time". Any amount exceeding the beneficiary's rights (here the $400,000) is genuine damages subject to a security interest. That's exactly how the district court apportioned this $1.2 million.

AFFIRMED